AUGUSTUS S. PEABODY, Appellee, *vs.* THE SANITARY DISTRICT OF CHICAGO *et al.* Appellants.

*Opinion filed April 21, 1928—Rehearing denied June 6, 1928.*

1. OFFICES—*when an office is ministerial.* Official action is judicial where it is the result of judgment or discretion but is ministerial when it is absolute, certain and imperative, involving merely the execution of a set task and when the law which imposes it prescribes and defines the time, manner and occasion of its performance with such certainty that nothing remains for discretion.

2. SAME—*when section 3 of statute in regard to public officers applies.* Section 3 of the statute in regard to public officers, which provides that any contract in which an officer is personally interested and in the letting of which he "may be called upon to act or vote" shall be null and void, disqualifies such officer from having any interest in the contract regardless of whether he has, in fact, been called upon to take action, as the question is not what the officer did but what he might be called upon to do that determines the application of the statute.

3. SAME—*duties of treasurer of Sanitary District of Chicago are not merely ministerial.* The duties of the treasurer of the Sanitary District of Chicago are not merely ministerial, as section 25 of the rules of the board of trustees of the district authorized by statute makes him the financial adviser of the district, authorizes him to select the depositaries of the funds of the district and makes him liable to the board for the custody of such funds, and in determining the financial responsibility of contractors for work of the district he may be called upon to act within the meaning of section 3 of the statute in regard to public officers.

4. SAME—*section 3 of the act in regard to public officers is not limited to officers named in constitution.* Section 3 of the act in regard to public officers, which prohibits any officer "under the constitution" from having any interest in a contract in the letting of which he may be called upon to act or vote, is not limited in its application to officers named in the constitution, but applies to all public officers holding office by election or appointment who are acting under the constitution.

5. STATUTES—*intention of statute must be ascertained and given effect.* The primary rule for construction of statutes is to ascertain and give effect to the intention of the legislature, and in seeking that intention courts are to consider the language used, the object to be attained or the evil to be remedied.

6. SANITARY DISTRICTS—*when contract of a sanitary district is void because of personal interest of treasurer.* The treasurer of the Sanitary District of Chicago is a public officer whose office is created by statute and the authority conferred upon him is to be exercised in the public interest and for the public benefit, and where he is vice-president and director of a corporation to which a contract has been let for work of the district, is owner of nearly one-half the stock of said company and is president of the bank which assisted a sub-contractor in financing the work, the contract must be held void under section 3 of the statute in regard to public officers.

7. LACHES—*when tax-payer's bill for accounting of public contract is not barred by laches.* Whether a tax-payer's bill for an accounting of expenditures under an alleged void contract for public work is barred by *laches* depends upon the diligence exercised by the complainant and upon his knowledge of the facts or opportunity to know them, and where fraud upon tax-payers is charged, *laches* will defeat relief only in a very unusual case.

APPEAL from the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

HECTOR A. BROUILLET, McCORMICK, KIRKLAND, PATTERSON & FLEMING, and MAYER, MEYER, AUSTRIAN & PLATT, (WARWICK A. SHAW, WEYMOUTH KIRKLAND, and FREDERIC BURNHAM, of counsel,) for appellants.

WALTER F. DODD, for appellee.

Per CURIAM: The controversy presented by the record in this case was heard in the superior court of Cook county upon a tax-payer's bill for accounting, on the amended bill, answers, replications and evidence heard in open court. The chancellor found the issues for the defendants and entered a decree dismissing the bill for want of equity. Complainant appealed to the Appellate Court, where the decree was reversed and the cause remanded to the superior court, with directions to order an accounting in accordance with the prayer of the bill. The Appellate Court granted a certifi-

cate of importance, and an appeal was perfected to this court by the defendants.

The commissioners of the district on the seventh day of November, 1921, made proposals for bids for the construction of the North Side intercepting sewer, contract No. 1, and gave notice that they would receive bids until ten o'clock A. M. on November 17, 1921, and that the bids would be publicly opened by the board of trustees on that day or at the first meeting thereafter. The proposals described the location of the sewer and the approximate length of 7400 lineal feet of sewer six feet six inches internal diameter, and 14,800 lineal feet of sewer four feet six inches internal diameter, and other miscellaneous work. Full instructions to bidders accompanied the proposals, with a blank form to be filled and signed by bidders. The bid of the Illinois Improvement and Ballast Company (hereafter called the ballast company) was accepted, and a contract for construction of the sewer, with specifications attached, was entered into November 23, 1921.

The ballast company for some time previous to 1919 had been engaged in the contracting business. Emil Seip was its president and Walter E. Schmidt its vice-president and owner of 1200 of the 5000 shares of its capital stock. In 1919 it disposed of its plant and equipment and all of its contracts and accounts payable on account of operations subsequent to May 1 of that year, together with good will and all property rights of every kind owned by it, to a newly organized corporation known as the Illinois Improvement and Construction Company, for which the ballast company received all of the capital stock of the construction company. Since that time the construction company has been a subsidiary of the ballast company, both having the same offices. It appears from the testimony of Seip that the object in organizing the construction company was to separate the contracting business from the other business of the ballast company. For that reason the latter turned over

all of its contracts and equipment to the former company. The ballast company was a holding company and held bank stocks and corporate stocks of various corporations to the value of $1,000,000. Schmidt handled the banking and investment end of the ballast company's business, and was president of the Roseland State Bank. One of the regular customers of that bank was the Byrne Bros. Construction Company, engaged in the contracting business. Schmidt testified that his bank's relations with the Byrne Bros. company had always been satisfactory and that it was regarded by his bank as financially responsible.

In January, 1921, Schmidt was appointed treasurer of the sanitary district by the trustees, the power of appointment being vested in them by section 4 of the Sanitary District act. By virtue of that section the board of trustees adopted rules governing the conduct of its business. Section 25 of the rules relates to the duties of the treasurer. Among others, he "shall receive all moneys of the district and make such payments as shall be ordered by the board, upon warrants signed by the chairman of the committee on finance and the clerk; shall sign all warrants and checks drawn for the account of the district; make all payments of principal and interest on bonds issued by the district when due; pay into the treasury of, and account to the district for, all sums received as interest on any deposit of funds of the district; make such reports as are required and act as the financial adviser of the board." The rule also provides: "The selection of depositaries for the funds of the district in the hands of the treasurer shall be entirely in the control of said treasurer, and no action of the board shall be considered as ratifying the selection of any depositaries by the treasurer or in any way waiving the strict liability of said treasurer for the custody of said funds and his accountability to the board therefor." It also provides that the salary of the treasurer shall be $2500 per annum, and he shall give bond in the sum of $3,000,000, and shall

file a supplemental bond to cover any liability in excess of this amount when required by the board of trustees. Schmidt testified that the only financial matter concerning which the board ever consulted him was "as to the market value of bonds at four per cent or four and a half per cent, whatever they think of issuing." This statement is not denied and so far as deemed material it is assumed as a fact.

Early in the month of November, 1921, and previous to November 7, when bids for construction work were called for by the district, Seip had a talk with a member of the Byrne company about doing the work of constructing the sewer. He testified that at that time he only knew of the contract for the sewer in a general way. November 9, two days after proposals for bids were made by the district, he entered into a written contract with the Byrne company reciting that the latter was desirous of constructing certain work for the sanitary district, known as contract No. 1 for the North Side intercepting sewer, and that it desired him (Seip) to finance the work. It provided that said work, if secured, is to be contracted for in the name of the ballast company and that the work was to be done by the Byrne company; that all of the money was to be collected by the ballast company and that it would pay the Byrne company all such money as it may need from time to time to carry on said work, out of the money received from the sanitary district, and upon the completion of the work and final payment therefor the ballast company would pay the balance of the money received by it from the district to the Byrne company. It further provided that the Byrne company was to reimburse the ballast company for any expenditures it might make in connection with the work, and that Seip was to receive from the Byrne company one dollar per lineal foot of sewer for his services in connection with financing the contract. As to the contract between Seip and the Byrne company, Seip testified at the trial that it was never formally assigned to the ballast company; that

he was the head of that company and ran it in his own way; that the contract was considered that of the ballast company and not his personal contract, and that the dollar per lineal foot was to go to that company and not to him personally; that the Byrne company had not been in business very long at that time and that it was a question of its need of financing, and that the contract was more a matter of financing it than anything else; that the Byrne company borrowed money from the Roseland bank from time to time, and that his connection with that bank, and the fact that the ballast company was financing the job, had something to do with the bank advancing the credit.

Four contractors submitted bids in response to the proposal of the district, the ballast company being the lowest. On submitting its bid, Seip, as its president and managing officer, made an affidavit, as required by rule of the trustees, that its bid was made "without reference or regard to any other proposal or proposals and without agreement, understanding or combination, either directly or indirectly, with any other person or persons with reference to such bidding in any way or manner whatsoever."

The proposal of the district upon which the bids were based did not call for lump sum bids. Fourteen items were specified, and bids were required to be submitted for each. Item 1 covered the larger and item 2 covered the smaller sewer. Items 10, 11 and 14 are the only specific items directly involved and passed on by the Appellate Court. It declined to reverse the finding and decree of the superior court upon the charges in the bill relating to the specific items in the contract. In the opinion it held that the action of the corporate authorities as to changes relating to materials in those items was within the terms of the contract and that the contention of the appellee here was without foundation. The reversal of the decree was based upon Schmidt's relation to the district as its treasurer, his connection with the contractors, and with the bank financing

them. It held that Schmidt, as treasurer, was holding an office within the provisions of the statute hereinafter considered, and that his relation to the sanitary district and the contractor rendered the contract null and void.

Five points were urged in the Appellate Court by appellee, who was appellant in that court. They are, first, that the contract was void because Schmidt, as treasurer, was interested in the contract, and by reason of his position as treasurer of the sanitary district he was, under the law and rule of the board of trustees of that district, subject to being called upon to act in the making of the contract. Second, that the ballast company was not a responsible bidder. Third, that the bid was collusive. Fourth, that the proposal submitted by bidders of the sanitary district was too indefinite to serve as a basis for competitive bidding. And fifth, that directions of the chief engineer ordering certain timbers to be left in place, which order involved additional excavating and concrete work, did not amount to a change of plans authorizing additional payments therefor.

The contention herein first stated concerns the relationship of Schmidt to the sanitary district and to the successful bidder, the ballast company. Section 3 of chapter 102 (Cahill's Stat. 1927, p. 1752,) provides as follows: "It shall not be lawful for any person, now or hereafter holding any office, either by election or appointment, under the constitution of this State, to become in any manner interested, either directly or indirectly, in his own name or in the name of any other person or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote, * * * and any and all contracts made and procured in violation hereof, shall be null and void."

That Schmidt was at least indirectly interested in the contract in question is admitted. Appellants contend, however, that Schmidt's relation to the sanitary district and to the contractors did not invalidate the contract for two rea-

sons: (1) That he was a ministerial officer and had nothing to do with the making of the contract involved; and (2) that he was not holding any public office under the constitution of the State. The first of these points requires a consideration of the distinction between an officer who exercises discretion and one whose duties are purely ministerial. Official action is judicial where it is the result of judgment or discretion. It is ministerial when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, manner and occasion of its performance with such certainty that nothing remains for judgment or discretion. (*Johnston* v. *City of Chicago*, 258 Ill. 494.) The duties of the treasurer of the sanitary district are prescribed by section 25 of the rules. Aside from prescribing that he shall receive the moneys of the district and pay them out on warrants properly signed, the section also provides that he shall "make such reports as are required and act as the financial adviser of the board." That section also provides that "the selection of depositaries for the funds of the district in the hands of the treasurer shall be entirely in the control of the said treasurer." Schmidt testified that he was out of town during most of the transactions in question and knew nothing of the proposed contract to be let by the district; that although he was vice-president and director of the ballast company, owned one-fourth of its stock and had charge of its financial affairs, he knew nothing of the bid which it made for the work in question here or of its relations with Byrne Bros. He testified that he was president of the Roseland State Bank but had no knowledge of the financing of Byrne Bros. under this contract by the bank. It will be readily seen, however, that the relationship which invalidates a contract is that which puts the interested party in a position where he "may be called upon to act or vote" in the making or letting of such contract. It is not contended that Schmidt was in a position to vote on

the making or letting of this contract, but appellee contends that section 25 of the rules of the board of trustees shows that he, as financial adviser of the board, might be called upon to act in the making of such contract. A portion of his duties were purely ministerial but others were not. He selected the depositary for all the funds of the district, and in this his discretion was complete. He was the financial adviser of the district and was required to make such reports as the trustees directed. The answers filed admit that he occupied a relation of trust and confidence to the sanitary district with respect to the execution of his duties as treasurer. While his testimony is to the effect that he had nothing to do with making or letting the contract to the ballast company, this is quite beside the point. If his duties were such that he could or might have been called upon to take any action in the matter of making a contract, that fact disqualified him from having any interest in the contract, either directly or indirectly, and such a contract was void.

It appears from the record that the board of trustees received four bids on the contract, one of which was that of the ballast company. It is admitted that it was its duty to award the contract to the lowest responsible bidder. The lowest bidder was the ballast company, of which Schmidt was vice-president, director, and owner of a large amount of stock. When the board of trustees examined the bid of the ballast company to determine whether it was responsible, that question involved a consideration not only of its equipment and ability to discharge the duties under such a contract from an engineering and contractual standpoint, but it also involved the responsibility of the ballast company financially. As to its equipment for the work the board would naturally turn to the district engineer. It is likewise not only natural and probable, but entirely permissible under section 25 of the rules, to turn to the financial adviser of the board to determine the financial responsibil-

ity of the ballast company. While the evidence of Schmidt is that the board did not seek his advice in this matter, yet it was his duty to give that advice had the board sought it. The question is not what Schmidt did, but what he might be called upon to do, which determines the application of the statute.

Counsel for appellants have cited cases holding that the duties of a treasurer are purely ministerial. These cases have no application here for the reason that they show from the statements of fact contained therein that they are not on all-fours with this case on the facts, for here Schmidt's duties required that he act as financial adviser. It may further be said that under his complete discretion as to the determination of depositaries for the moneys of the district he might properly deposit those funds in the Roseland State Bank, of which he was president. It is not denied that the Roseland State Bank financed Byrne Bros. on this contract. Schmidt might, therefore, as treasurer of the company, have financed Byrne Bros. with the very money of the district deposited by him, as treasurer, in that bank.

Counsel for appellants urge that the board of trustees reserved to itself the determination of the financial responsibility of the ballast company and sought the advice of its engineer on that matter, and they cite in support of the argument that Schmidt, therefore, could not be considered as in a position to be called upon for such advice, the case of *Johnson* v. *Sanitary District*, 163 Ill. 285. That case does not hold that an officer of the board having duties such as were imposed upon Schmidt as treasurer cannot be called upon to assist in the making of a contract. We are of the opinion that Schmidt's duties were not merely ministerial and that this contention of appellants cannot be sustained.

Was Schmidt an officer "holding any office, either by election or appointment, under the constitution of this State?" Appellants contend that he cannot be so consid-

ered because his office was not created by the constitution and is not within the constitutional definition of the word "office." The act of which section 3 herein quoted is a part, is entitled, "An act to prevent fraudulent and corrupt practices in the making or accepting of official appointments and contracts by public officers." It is, of course, to be conceded that some offices are created by the constitution and some by the statute. The treasurer of the Sanitary District of Chicago is of the latter class. What, then, is the meaning of the language of section 3, "under the constitution of this State?" Appellants urge that it was intended by the legislature that the public officers within the provision of the act should mean officers filling such offices as are created by the constitution. An examination of the act will disclose that such a construction is entirely too narrow to carry out the purposes indicated in the title of the act. In the first place, it will be noted that the officers coming within the provisions of the act are those holding office, "either by election or appointment, under the constitution of this State." Section 1 of the act declares it unlawful for a supervisor or county commissioner, during the term for which he is elected, to hold any office by appointment of the board of which he is a member. Section 2 contains a similar prohibition as to city aldermen or village trustees. Section 3 is as above quoted, and relates not to holding office by appointment of a board of which the appointee is a member, but to the making of contracts. Section 4 provides the penalties to be inflicted under the act, and is as follows: "Any alderman, member of a board of trustees, supervisor or county commissioner, or person now or hereafter holding any office, either by election or appointment under the constitution of this State, or any law now or hereafter in force in this State, who shall violate any of the provisions of the preceding sections, shall be deemed guilty of a misdemeanor," etc. The provisions of this section relate to the contracts forbidden by section 3.

Section 3 forbids any interest on the part of any person holding office, either by election or appointment, under the constitution of this State, in any contract in the making of which such officer may be called upon to act or vote. It is the evident purpose of the act to forbid not only corrupt practices in making or accepting official appointments by members of the board of supervisors or commissioners and city councils or village trustees, but also corrupt practices by public officers in the making of contracts. The thing prohibited is an interest of a public officer, either directly or indirectly, in any contract in the making of which some action may be required of such officer. To limit the purpose of that act to only such public officers as are enumerated under the constitution would be to narrow the plain purpose of the statute as indicated in its title. Both the title and language of the act are broad and apply to all officers, State or local, holding office by election or appointment, who are acting under the constitution and who may be called upon to act or vote in the making or letting of contracts.

The primary rule for construction of statutes is to ascertain and give effect to the intention of the legislature. The intent of the statute is the law, and the object of interpretation of statutes is to ascertain that intent. It is to be sought first in the language used in the statute, and if that language be free from ambiguity and doubt, other means of interpretation cannot be resorted to. In seeking the intention of the legislature courts are to consider the language used, the object to be attained or the evil to be remedied. (*City of Decatur* v. *German,* 310 Ill. 591; *Peabody* v. *Russel,* 301 id. 439.) In the language of section 3 of the act, the word "under" the constitution is to be considered in its ordinary and obvious sense and relates to all officers who are operating under the constitution, and is not to be limited only to those officers named or enumerated by it.

Appellants' counsel, in support of their argument that this language should be so limited, refer to the fact that other laws applicable to interest in contracts on the part of specific groups of officers have since been passed. These latter acts, however, are not to be construed as a limitation on the act here involved, but rather as a part of a series of statutes establishing a public policy to forbid interest by public officers or employees in public contracts. The acts referred to are the sanitary district acts of 1911 and 1917, forbidding interest in contracts on the part of trustees or employees. (Smith's Stat. 1927, chap. 42, pars. 279, 301.) These acts are broad in their terms but in nowise prevent the application of the act under consideration here to the facts of this case.

Appellants' counsel argue that Schmidt does not hold an "office," as that word is defined in section 24 of article 5 of the constitution. That section defines an office as "a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed." This court has held that this definition is one to be limited in its application as a definition, to the State government with whose executive department article 5 of the constitution deals. (*Fergus v. Russel,* 270 Ill. 304.) The same rule of distinction between "office" and "employment" laid down in *Fergus v. Russel* applies to local governments as well as to State government. Schmidt's position as treasurer is an office. It is created by statute. He is elected by the board. He holds office during the pleasure of the board. His· duties and compensation are determined by it. (Smith's Stat. 1927, chap. 42, par. 323.) It is also a public office and he likewise a public officer. In the discharge of his duties he exercises a part of the public powers or sovereignty so far as those powers are by the statute vested in the sanitary district. Those powers are to be exercised in the public inter-

est and for the public benefit. These contentions of appellants cannot be sustained.

We are of the opinion that the record shows that Schmidt was interested in this contract and that the position he occupied was that of an officer who might be called upon to act in the making of that contract, as contemplated by section 3 of the act quoted. The contract was therefore void and the Appellate Court did not err in so holding.

The other four points concerning the construction of the contract have been decided by the Appellate Court contrary to the contention of appellee here, and the latter is conceding that if the Appellate Court was right in its decision concerning the relationship of Schmidt to the contract it is not necessary to consider the other points passed upon by the Appellate Court. Under the record as we view it, it does not become necessary to pass upon those points. Appellants urge in addition, however, that appellee is barred by *laches*. At the time the bill was filed ninety per cent of the work of the sewer was completed, though a large amount of the money remained unpaid. Subsequent to the dismissal of the bill by the trial court further payments, amounting to something over $500,000, were made. Accounting was sought on the ground of over-payment under the terms of the contract if the contract is valid, and in case the contract is invalid because of the relationship of Schmidt thereto a settlement should be had for the benefits actually received on a *quantum meruit* basis, to be established by an accounting. Whether the doctrine of *laches* applies in a case of this character depends upon the diligence exercised by the complainant. This, in turn, is to be governed by his knowledge of the facts or opportunity to know them. It appears that the bill was filed shortly after the report of the consulting engineer, which for the first time disclosed the facts set out in the bill. We are of the opinion that without the exercise of unusual diligence on the part of the complainant he cannot be said to have

had notice or be charged with notice prior to the publication of this report of the facts concerning this contract. The rule is, that where, as here, fraud upon the tax-payers is charged, the doctrine of *laches* is employed to defeat relief only in a very unusual case. (*Voorhees* v. *Campbell,* 275 Ill. 292.) We are of the opinion that the right of appellee as a tax-payer is not in this case defeated by *laches.*

The judgment of the Appellate Court reversing the decree of the superior court, with directions to that court to order an accounting in accordance with the bill of complaint, is affirmed.

*Judgment affirmed.*