191 P.2d 169

MAGMA COPPER CO. v. ARIZONA STATE
TAX COMMISSION.

No. 4950.

Supreme Court of Arizona.

March 15, 1948.

Edward W. Rice, of Globe, and Roy C. Bonebrake, of New York City, for appellant.

John L. Sullivan, Atty. Gen., and Burr Sutter, Asst. Atty. Gen., for appellee.

PHELPS, Superior Judge.

This is an appeal relative to an income tax matter by the Magma Copper Company, a corporation (appellant), from an order of the trial court dismissing for lack of jurisdiction its attempted appeal to the Superior Court from an order of the Arizona State Tax Commission (appellee).

The material facts in this case are, in substance, as follows: On September 15, 1941, the Arizona State Tax Commission, (hereinafter referred to as the Commission) pursuant to provisions of law relating to the collection of income tax, by its Order No. 178—1941—9, levied additional assessments of income taxes on appellant for the years 1939 and 1940.

Appellant promptly protested such assessments and requested a hearing before the Commission, setting forth the grounds on which said request was made. A hearing was held before the Commission on April 22, 1942. Thereafter, on December 29, 1942, the Commission, by its Order No. 216 denied said protest and affirmed said assessment

No appeal was taken from said order but on January 7, 1943, appellant requested a rehearing on the order of the Commission affirming said assessments in order that further evidence and proposals for an equitable settlement thereof might be presented.

On January 13, 1943, the Commission entered its Order No. 2—1943—1 rescinding Order No. 216 dated December 29, 1942, and stated in said order that said recision was made in order that appellant might present additional evidence for the consideration of the Commission and set January 16, 1943, as the date for rehearing.

· The matter came on for hearing as scheduled and evidence presented at the original hearing was discussed but no new evidence of any nature was presented.

Decision on the matter was still pending in March, 1945, when appellant filed with the Commission objections to additional income assessments for the years 1939 and 1940 and request for further hearing supported by the affidavit of one J. R. Mays, Chief Clerk and Auditor of the appellant company.

On October 11, 1945, the Commission by its Order No. 49—1945—10 denied further hearing and confirmed its original assessments with some minor reductions.

Within the statutory period, appellant appealed to the Superior Court of Pinal County from said order.

The parties entered into a stipulation of facts and briefs were filed by both appellant and the Commission on the merits of the case. In addition thereto the Commission filed a motion to dismiss said appeal on the ground that the court lacked jurisdiction of the subject matter.

It was the contention of the Attorney General, representing the Commission, both before the trial court and here, that the latter had exhausted its jurisdiction in the matter when it entered its Order No. 216 on December 29, 1942, and that all action taken by it thereafter was null and void, and that the order from which the appellant was attempting to appeal was null and void and therefore the Superior Court was without jurisdiction to entertain said appeal.

On October 2, 1946, the Superior Court granted said motion to dismiss, leaving undecided the merits of the case. This appeal followed.

Appellant contends here, as it did in the Superior Court, that the Commission has broad and continuing jurisdiction under the law, to estimate the correct tax to be assessed and collected under the Arizona income tax law; that its jurisdiction is not exhausted by holding one hearing or making one order on a tax assessment but includes the power to reconsider and change its own assessments and orders with or without rehearing and that the rule laid down by the courts (that certain bodies with limited judicial functions have no jurisdiction to reconsider, set aside or modify their judgments without separate statutory authority) has no application in the instant case.

The sole question presented to this court is: Did the Commission have jurisdiction to enter its order on October 11, 1945? If it did, the trial court erred in dismissing the

proceedings before it by its order and judgment of October 2, 1946. If the Commission exhausted its jurisdiction in said cause by entering its Order No. 216 of December 29, 1942, the action of the trial court must be sustained.

If the Commission in entering said order was performing merely a ministerial act, such action was not necessarily final. If, on the other hand, in entering said order it was exercising a judicial function, the authorities uniformly hold that such action exhausts its jurisdiction unless the statutes by separate grant authorize further action. (See authorities hereinafter cited.)

The answer to the question presented must be found in the language of the statute defining the powers, duties and limitations of the Commission relating to income taxes.

The Income Tax Act of 1933, Art. 15, Chap. 73, A.C.A.1939, specifically defines the powers and duties of the Commission in the administration and enforcement of said law and is the measure of such powers and duties. This being true, it becomes necessary to examine said act and glean from the provisions thereof what the powers and duties of the Commission are and whether its functions are judicial or ministerial or whether it performs both ministerial and judicial functions.

Section 73-1505, A.C.A.1939, provides in part as follows:

"(c) For the purpose of ascertaining the correctness of any report of income, or making an estimate of the taxable income of any taxpayer, the commission shall have power to examine or cause to be examined by any agent or representative, any books, papers, records, or memoranda, bearing upon the matters required to be included in the report, including a copy of the taxpayer's current income tax return to the United States government, and all amendments to said return, whether arrived at by compromise or adjudication, after hearing and final determination by the federal government, and to require the attendance of the taxpayer or of any other person having knowledge in the premises, administer oaths, take testimony and require proof material for its information, by the same means and in the same manner as allowed to courts of record. If any person summoned to appear to testify or to produce books, papers, records, or other data, shall refuse to do so, the superior court for the county in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

\*     \*     \*     \*     \*     \*

"(f) The commission shall have power to appoint and employ such agents, specialists and clerks, within the limits of appropriations and compensation prescribed by law, as it may deem necessary to fully effectuate the purposes of this act."

Sections 73-1506 to 73-1533, A.C.A.1939, inclusive, set forth in detail methods of

computing the tax to be paid, classifying taxpayers; fixing rates to be used in each classification in computing said tax; providing for deductions and exemptions; fixing the time for filing income tax reports with the Commission; providing penalties for failure to file return and apportioning the income derived from within and without the state, etc., etc.

Section 73-1534 to Section 73-1539, A.C. A.1939 inclusive, provide as follows:

"73-1534. Office audit—Correction.—(a) As soon as practicable the commission shall audit each report of income filed, and compute the tax, and the amount so computed shall be the tax. If it shall be found that any person has been over or underassessed, or that no assessment has been made when one should have been, the proper correction or assessment shall be made. If the tax found due shall be greater than the amount theretofore paid, the deficiency shall be paid to the commission within twenty [20] days after notice to and demand upon the taxpayer.

"(b) If the report was made in good faith and the deficiency of the tax is not due to any fault of the taxpayer, there shall be no penalty or additional tax added because of such deficiency, but interest shall be added to the amount of the same from the date the tax was originally due until paid, at the rate of six [6] per cent per annum.

"(c) If the tax found due shall be less than the amount theretofore paid, the com-mission shall certify such overpayment to the auditor, for refund, and the auditor shall draw his warrant for the amount, on the 'income tax suspense fund,' in the favor of the taxpayer.

"(d) Any correction or assessment made as a result of such office audit shall be presumed to be the result of an audit of the report of income only, and shall not be deemed a verification of any item in the report nor preclude the commission from making field audits of the books and records of the taxpayer and from making further correction or assessment.

"73-1535. Field investigation.—Whenever it is deemed advisable to verify a report of income or otherwise ascertain the taxable income of any person the commission may direct such verification to be made, and for such purpose shall have the powers prescribed by section 5 [§ 73-1505]. Upon such information as may be gained, the commission shall determine the true amount of income received during the year or years under investigation. If it shall appear upon investigation that a person has been over or underassessed, or that no assessment has been made when one should have been made, the commission shall make a correct assessment.

"73-1536. Limitation on corrections.—Corrections or additional assessments of income may be made at any time within three [3] years after the close of the period covered by a report of income; provided,

that if in any year no return is filed, income of any such year may be assessed when discovered."

"73-1538. Notice of correction or of assessment.—(a) When a correction or assessment has been made, as provided in sections 34 and 35 [§§ 73-1534 and 73-1535], the taxpayer shall be given notice thereof, in writing, by registered mail, or served as a superior court summons. Service by regular mail shall be deemed sufficient if receipt thereof is admitted, or there is other satisfactory evidence of receipt.

"(b) Within thirty days after such notice the taxpayer may present evidence, oral or in writing, under oath, and the controverted correction or assessment may be modified if, in the judgment of the commission, such action is justified by the facts disclosed.

"(c) If within thirty days after such notice, the taxpayer does not request a hearing before the commission, the correction or assessment as proposed, or as modified in accordance with subsection (b) shall be final and conclusive and the tax shall become immediately delinquent.

"73-1539. Hearing by commission.—Any person aggrieved by the correction or assessment of his income shall be entitled to a hearing before the commission, if within twenty [20] days after the notice prescribed by section 38 [§73-1538] he shall in writing request the same and explain in detail his objections to such correction or assessment. Upon a request for hearing the commission shall fix the date and place of hearing, and shall hear the taxpayer and render its decision."

It will be observed that these sections prescribe the duties of the commission in arriving at a correct examination of taxes upon incomes; limit the time within which the commission may discharge its duties and exercise its powers; reaffirm the powers of the commission set forth in Section 73-1505, supra, and detail each step to be taken by said Commission in its administration and enforcement of the provisions of the Income Tax Act. Sections 73-1538 and 73-1539, supra, also include the steps to be taken by the taxpayer, to protect his rights in the event the commission levies additional assessments against him or makes corrections in the amount of tax to be paid and provides for a hearing before the Commission with the right to present evidence both oral and written in support of his protest.

It will be further observed that the law provides that as soon as practicable after the income tax return has been received, the Commission shall audit such report and compute the tax "and the amount so computed shall be the tax." This law defines the duties of the Commission in the event it makes any correction in the amount of taxes to be collected and expressly provides that "any correction or assessment made as the result of such audit shall be presumed to be the result of an audit of the report of income only, and shall not be deemed a verification of any item in the report nor pre-

clude the Commission from making further audits of the books and records of the taxpayers and from making further correction or assessments."

Said office audit consists merely of a check upon the report as filed to determine its mathematical accuracy and to determine if said report complies with the law in its application to classification, rates, deductions, etc. The law leaves the question of the correctness of the items set forth in said report open for field investigation in the event the Commission deems such investigation advisable and gives to the Commission the power to make further correction and assessments.

Upon the office audit being concluded, the Commission is required to give the taxpayer notice of any correction or assessment made by it. The taxpayer is given the right to a hearing before the Commission; to present evidence orally or in writing under oath relating to said return. Following such hearing the Commission is empowered to modify said assessment if, from the evidence, it considers such action is justified.

If the taxpayer does not, within the time fixed in the law, request a hearing before the Commission, the correction or assessment shall be final and conclusive and the tax shall become immediately delinquent. The same procedure is prescribed after a field investigation where the Commission makes a correction or additional assessment.

While the office audit, under the law, must be made as soon as practicable after the taxpayer files his report, the Commission is empowered to make its field investigation, and if the investigation justifies it, to make an additional assessment or correction of income at any time within three years after the close of the period covered by the report of income.

Appellant contends that the language employed in Section 73-1536, supra, indicates a clear intent of the legislature to vest the Commission with broad and continuing jurisdiction over income tax reports and assessments and gives it power to make any number of corrections or assessments with or without hearing. Appellant draws such inference, in part, from the use of the words *"corrections or additional assessments"* where the plural is used instead of the singular as used in some of the preceding sections of the act. We cannot find such intent in the language of the statute either expressed or implied. The use of the plural in connection with "corrections or additional assessments" we think does not have the significance claimed by appellant. A more logical interpretation of the use of the plural in referring to said action is that the legislature had reference to the corrections and assessments made against the various items of income as set forth in the report and which when added together constitute the total "correction or additional assessment". This construction does no violence to the language of the act and comports with the general tenor of said law.

■ Said section is, clearly, nothing more nor less than a statute of limitations, prohibiting the Commission from making corrections or additional assessments against taxpayers based on field investigations after three years from the close of the period covered by the report. Without such limitation there would never be a finality to the corrections or additional assessments of the Commission.

■ Appellant also claims that because the law makes no restrictions upon the Commission as to when or how many corrections or assessments it may make, it necessarily follows that it has power to make as many corrections or assessments as it may see fit. This court held in Johnson v. Betts, 21 Ariz. 365, 188 P. 271, 273:

" * * * It is well recognized that special tribunals exercising special summary powers must find their authority within the statute. * * * "

In the case of Lustig v. Superior Court, 79 Cal.App. 629, 250 P. 702, 703, it was held that:

" * * * Where a statutory remedy or proceeding is specially provided, it cannot be enlarged by construction, nor made available or valid except on the statutory conditions; * * *." Citing Brickner v. Sporleder, 3 Okl. 561, 41 P. 726.

The legislature, in enacting the Income Tax Act of 1933 was so meticulous in detailing the powers and duties of the Commission and the procedure to be followed by it in the administration and enforcement of the income tax law, that it would seem there could be no doubt as to the extent of the powers granted to it, or as to the character of the functions of the Commission in the exercise of said powers and in the discharge of its duties.

■ It is clear that the Commission, in the administration of said law, acts both in a ministerial and judicial or quasi-judicial capacity. In making the office audit and the field investigation through its agents and representatives it is unquestionably acting in a ministerial capacity. An act is ministerial where the law requiring it to be performed, prescribes the time, manner, and occasion of its performance with such certainty that nothing remains for judgment or discretion. Peabody v. Sanitary Dist. of Chicago, 330 Ill. 250, 161 N.E. 519; Kirby Lbr. Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382.

The Commission, in conducting a hearing under the provisions of Section 73-1539, supra, in receiving evidence, oral and documentary and rendering its decision based upon such evidence was acting in a judicial or quasi-judicial capacity. Johnson v. Betts, supra.

■ A judicial act is one that determines what the law is, and what the rights of the parties are, with reference to transactions that have been had; one that undertakes to determine questions of right or obligation. Union Pac. R. Co. v. United States, 99 U.S. 700, 25 L.Ed. 496.

■ An official act is judicial where it is the result of judgment or discretion, based upon evidence received at a hearing provided by law. Peabody v. Sanitary Dist. of Chicago, supra; Kirby Lbr. Co. v. Adams, supra.

■ The fact that the legislature provided for an appeal from the decision of the Commission after the hearing provided for in Section 73-1539, supra, is to our mind, conclusive evidence that it intended that said decision should be final and that said appeal should constitute the exclusive remedy of appellant. Hunt v. Schilling, 27 Ariz. 235, 232 P. 554; Olive Proration Program v. The Agrl. Prorate Com., 17 Cal.2d 204, 109 P.2d 918.

"Inferior tribunals acting judicially cannot grant a rehearing, and * * * their jurisdiction terminates with their decision." Peters v. Berryman, 30 Ariz. 120, 245 P. 282, 284.

It logically follows that since the Commission, in rendering its decision and entering its Order No. 216 on December 29, 1942, was exercising a judicial function, that upon entering said order, it exhausted its jurisdiction.

Even the cases cited by appellant support the proposition that if the action performed by a board, commission or other inferior body is judicial in character, the jurisdiction of such inferior tribunal is exhausted when it renders its decision. State v. Board of Supervisors of Yavapai County, 14 Ariz. 222, 127 P. 727; People v. Supervisors of Schenectady, 35 Barb., N.Y., 408; People ex rel. Hotchkiss v. Supervisors of Broome Co., 65 N.Y. 222.

■ While some of the cases cited by appellant including People v. Stocking, 50 Barb., N.Y., 573; Equitable Trust Co. v. Hamilton, 226 N.Y. 241, 123 N.E. 380, and People ex rel. Hotchkiss v. Board of Supervisors, supra, noted certain exceptions to the rule, they all recognize the principle that when the statute intends a quasi-judicial act to be final that it may not thereafter be revoked. Under the law and facts of the instant case no exception to the rule can be justified.

The Industrial Commission cases cited by appellant have no application here because the authority granted the Industrial Commission under the statute is entirely different from the authority granted the Tax Commission under the provisions of the Income Tax Act of 1933.

■ Nowhere in the income tax law is there any authority for a rehearing by the Commission upon rendering its decision after the hearing provided for in Section 73-1539, supra. The only remedy provided for is by appeal to the Superior Court. No appeal was taken from the order of the Commission of December 29, 1942. Instead the appellant, for some reason, moved for a rehearing. The Commission was wholly without authority to grant a rehearing or to take any further action of any kind in

the matter. All actions thereafter taken by it, including its Order of October 11, 1945, were null and void.

Said order being null and void the attempted appeal therefrom to the Superior Court conferred no jurisdiction upon said Court. Its order and dismissal must therefore be sustained and it is so ordered.

LA PRADE and UDALL, JJ., concur.

STANFORD, C. J., being ill, the Honorable M. T. PHELPS, Judge of the Superior Court of Maricopa County, was called to sit in his stead.