451 P.2d 612

Charles E. SANDERS, Jr., Gloria Willson and Canuto Sena, President, Clerk and Member respectively of the Board of Trustees of Naco Common School District No. 23, Cochise County, Arizona, ex rel. Naco School District No. 23, Cochise County, Arizona, a body politic, Petitioners,

v.

Sarah FOLSOM, State Superintendent of Public Instruction, Respondent.

No. 9463.

Supreme Court of Arizona.

In Banc.

March 6, 1969.

■

Richard J. Riley, Cochise County Atty., Alan L. Slaughter, Deputy County Atty., Bisbee, for petitioners.

Gary K. Nelson, Atty. Gen., Alvin E. Larson, Special Asst. Atty. Gen., Phoenix, for respondent.

McFARLAND, Justice.

■ The Board of Trustees of Naco Common School District No. 23, Cochise County, Arizona, hereinafter referred to as Naco, filed an application for writ of mandamus, seeking to compel the State Superintendent of Public Instruction, hereinafter referred to as Superintendent, to provide Naco with $90,957.01 which was tentatively allocated by the Superintendent to Naco as "state financial assistance" under A.R.S. § 15–1223.

The Superintendent refused to disburse the above stated amount of "financial assistance" because the board of supervisors had levied a tax rate of only three cents per one hundred dollars of assessed valuation on the taxable property in the Naco School District.

The Superintendent justified withholding disbursal of the funds because she interpreted the pertinent statute as requiring an actual levy of twenty cents per one hundred dollars of assessed valuation in order for a school district to qualify for "financial assistance". The pertinent provision of the statutes is found in A.R.S. § 15–1221, subsec. 6 and reads as follows:

" 'District qualifying tax rate' means the tax rate of ten cents per one hundred dollars assessed valuation of property in each common school district and ten cents per one hundred dollars assessed valuation in each high school district, which was levied by the county board of supervisors for the year's maintenance and operational expenses of each such district as a condition the district must meet to be eligible for participation in the state school financial assistance monies for the current year. In elementary districts that are not in a high school district, the county board of supervisors shall have levied an additional ten cents levy in each such district, if the district is to qualify for financial assistance to pay tuition for high school pupils. The district tax rate used for determining eligibility for financial assistance shall be computed exclusive of any financial assistance received by the district."

On question to be answered is whether the above statutory provision requires an *actual levy* of a tax rate of at least twenty cents per one hundred dollars assessed valuation in order for a school district to qualify for state "financial assistance".

We must construe the meaning of that part of A.R.S. § 15–1221, subsec. 6 which reads, "The district tax rate used for determining eligibility for financial assistance shall be computed exclusive of any financial assistance received by the district." The sentence implies that a "tentative" tax rate should be calculated for the current year exclusive of "financial assistance". Then the actual tax rate could be calculated based on the amount of "financial assistance" to be received by the district. The above meaning is contradicted, though, by the mandate that the minimum qualifying tax rate be levied "* * * as a condition the district *must meet* to be eligible for participation in the state school financial assistance monies for the current year." (Emphasis added.) Also, elementary districts that are not in a high school district "* * * *shall have levied* an additional ten cents levy in each such district, if the district is to qualify for financial assistance to pay tuition for high school pupils." (Emphasis added.) See also A.R.S. § 15–1224.

In construing a revenue statute, this Court has said:

"If possible, meaning should be given to each word, clause or sentence considered in the light of the entire act itself and

the purposes for which it was enacted into law. Webb v. Frohmiller, 52 Ariz. 128, 79 P.2d 510; Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120.

"Statutes relating to taxes should be given a liberal construction in order to effect the objects sought to be accomplished and promote justice; State v. McEuen, 42 Ariz. 385, 26 P.2d 1005. The aim of the court likewise should be to give it a sensible construction such as will accomplish the legislative intent and if possible avoid an absurd conclusion or avoid making the statute invalid. DeMund v. Meade, 13 Ariz. 236, 108 P. 479." State v. Airesearch Mfg. Co., 68 Ariz. 342, 348, 206 P.2d 562, 567.

The conclusion, then, to be drawn from the above provisions is that a school district be required to pay either ten cents or, as in this case, twenty cents per one hundred dollars assessed valuation to qualify for "financial assistance" in the current year. This interpretation is verified by reading the pertinent provision in A.R.S. § 15–1223, subsec. B 4:

"B. In computing the amounts of state financial assistance that each common and high school district shall receive, the following revenues shall be credited to the basic cost of education of each district:

\*   \*   \*   \*   \*   \*

"4. The district *tax yield* from the levy of the *district qualifying tax rate* on the current year's assessed valuation \* \* \*." (Emphasis added.)

Obviously this can only mean that the minimum amount set forth in A.R.S. § 15–1221 must be levied and collected.

It is provided in A.R.S. § 15–1225 that: "In no event shall any school district receive more financial assistance than it is entitled to receive as provided by this article and any overage shall be returned by the school district and credited to the state school financial assistance fund." This provision would be surplusage if it wasn't the legislative intent that the school

districts share the burden of education by paying a minimal rate of tax and there could be no "overage" if there was no limitation on the amount to be disbursed. Therefore, no matter what amount may be appropriated for any district, it is incumbent on the Superintendent to disburse no more than that amount which will reduce a district tax rate to the minimum set forth in A.R.S. § 15–1221.

This is made clear by a subsequent article of the Education Act which concerns "state equalization aid". In A.R.S. § 15–1228.01, prescribing the formula for distribution of equalization monies, we find the following provision:

"2. The equalization aid prescribed by the terms of this article shall be the amount specified by the terms of this article or a lesser amount sufficient to reduce the actual district tax levy for maintenance and operational purposes to an amount equal to a tax rate of ten cents for each one hundred dollars of assessed valuation." A.R.S. § 15–1228.01, subsec. B 2.

We could hardly ascribe to the legislature an intent to limit state funds to an amount calculated to reduce the district tax rate to a "floor" of ten cents per hundred dollars assessed valuation and simultaneously to give, under A.R.S. § 15–1221, state funds in such an amount as to "wipe out" any tax responsibility by the school districts.

It is our construction that the statutes involved here were intended to raise the standards of education to an equal plane throughout the entire state and, similarly, to establish a uniform rate of tax in every school district in the state—ten cents per one hundred dollars assessed valuation in every "common school district" and "high school district" and twenty cents per one hundred dollars assessed valuation in every "common school district not in a high school district that pays tuition for high school pupils residing in such district." Thus, it is the obligation of the Superintendent to distribute funds, under both Article 2.1 and Article 2.2 of Chapter 12,

15 A.R.S., only in such amounts as to maintain the foregoing standard tax rates.

This construction requires a levy of ten cents for common school districts not in a high school district and an additional ten cents where such district pays high school tuition, which makes the total of twenty cents per one hundred dollars assessed valuation. This is proper for it places those taxpayers, such as in the Naco School District, on the same footing as taxpayers in a "common school" and "high school" district who pay ten cents on one hundred dollars assessed valuation to each district.

Thus, as we have stated, it is the administrative duty of the Superintendent to disburse "financial assistance" and "equalization" funds in a manner calculated to maintain the minimum tax obligations of the various school districts.

■ The question then is whether the Naco School District should now be deprived of the benefits of the state funds when it fully complied with all the provisions of the act.

A.R.S. § 15–1201, as amended, provides:

"A. Not later than July 3 each year the governing board of each common or high school district shall prepare and furnish to the county school superintendent and the state superintendent of public instruction a proposed budget for the current fiscal year, which shall contain the information and be in form as follows: [Then follows an illustration of the form.]"

In accordance with A.R.S. § 15–1201, as amended, the Naco School District prepared, on the form furnished by the State Superintendent of Public Instruction, a proposed budget for the current fiscal year, which contained all the information required by A.R.S. § 15–1201 and other information required for county, state and special assistance. This budget was presented to the taxpayers as provided for in A.R.S. § 15–1202, as amended, at a meeting of the board of trustees and, in accordance with § 15–1202, was adopted by the board of trustees before the 10th day of July and filed by the board of trustees prior to the 12th day of July, in triplicate, with the county school superintendent, who immediately transmitted a copy to the Board of Supervisors of Cochise County and a copy to the Superintendent.

The budget also included anticipated revenues from all sources, as provided for in the form supplied by the Superintendent, including the anticipated $90,957.01 figure which had been supplied by the Superintendent. This budget was transmitted to the board of supervisors for levy as provided for in A.R.S. § 15–1236, which reads as follows:

"The board of supervisors of each county shall annually, at the time of levying other taxes, levy a special school district tax on the property in any district in which an additional amount is required, which shall be at a rate sufficient to provide the additional amount. The tax shall be added to and collected in the same manner as other county taxes on the property within the district. The amount of the special school district tax levied upon the property in a particular school district shall be paid into the school fund of such district."

Therefore, the district completed all of the steps for the action of the board of supervisors before the 12th day of July, 1967, evidently with the full expectation that the board of supervisors would make the proper levy under A.R.S. § 15–1221. It then became the duty of the board of supervisors under A.R.S. § 15–1236 to have made a levy to meet this budget and to fully comply with A.R.S. § 15–1221, subsec. 6, which required a levy of ten cents per one hundred dollars assessed valuation for common school purposes and ten cents per one hundred dollars assessed valuation for high school purposes. They then could have anticipated the balance of the budget would be supplied from the Financial Assistance Act under A.R.S. § 15–1223. The law was new and the board of supervisors, through a misunderstanding from informa-

tion furnished, made a mistake and did not make the proper levy.

Under A.R.S. § 15–1225, as amended, the district would have received the difference of the monies received from the regular state and county assistance plus the amount of money provided for in the levy of twenty cents per one hundred dollars assessed valuation up to and including the total sum of the budget. However, the board of supervisors failed to make the levy in accordance with the law. They used the $90,957.01 figure supplied by the Superintendent contrary to A.R.S. § 15–1221, and only levied three cents per one hundred dollars assessed valuation contrary to the duty imposed upon them under A.R.S. § 15–1225 to fix a levy of twenty cents per one hundred dollars assessed valuation.

The question then is whether the school district can be deprived of this state assistance because of the failure of the board of supervisors to perform a ministerial duty to make the levy. This Court in interpreting a ministerial duty in the case of Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P.2d 169, which was a tax case involving the duties of the State Tax Commission, said:

"An act is ministerial where the law requiring it to be performed, prescribes the time, manner, and occasion of its performance with such certainty that nothing remains for judgment or discretion. Peabody v. Sanitary Dist. of Chicago, 330 Ill. 250, 161 N.E. 519; Kirby Lbr. Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382." 67 Ariz. at p. 85, 191 P.2d at p. 174.

In the State of Kentucky the Supreme Court, in construing the obligations of the fiscal court, which was the equivalent of our board of supervisors, stated that:

"This section mandatorily requires the fiscal court to levy the tax at the rate specified by the board within the limits prescribed, and, since it is necessary that the board receive the benefits of the school equalization fund to properly conduct and maintain the schools of the county, the fiscal court is without discretion in the matter." Fiscal Court of Monroe County v. Board of Education, Monroe County, 294 Ky. 758, 172 S.W.2d 624.

Because of the failure of the board of supervisors to perform an obligation, an irreparable harm will be done to innocent third parties—the children and taxpayers of the school district. It is here that this Court can, and must, exercise its powers in equity.

In tax matters there are a long line of cases which hold that the statutes should be so construed as to avoid hardship or injustice and are to be liberally interpreted in favor of the taxpayer. General Petroleum Corp. of Cal. v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364; City of Phoenix v. Borden Co., 84 Ariz. 250, 326 P.2d 841; State Tax Commission v. Wallapai Brick & Clay Products, Inc., 85 Ariz. 23, 330 P.2d 988; Corporation Commission v. Equitable Life Assur. Soc. of United States, 73 Ariz. 171, 239 P.2d 360; Arizona Tax Commission v. Dairy & Consumers Co-op Assn., 70 Ariz. 7, 215 P.2d 235; Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363; State v. Airesearch Mfg. Co., supra; and also giving due regard to the expression of legislative intent, Moore v. Smotkin, 79 Ariz. 77, 283 P.2d 1029, rehearing denied, 79 Ariz. 401, 291 P.2d 216; State Tax Commission v. Miami Copper Co., 74 Ariz. 234, 246 P.2d 871; Hill v. County of Gila, 56 Ariz. 317, 107 P.2d 377.

Discussing a penalty clause in General Petroleum Corp. of Cal. v. Smith, supra, this Court said:

"Penalties are not favored and penal statutes are to be strictly construed. Tax measures are, if possible, to be construed to avoid hardship or injustice. They are to be liberally interpreted in favor of the taxpayer. This does not mean that the penalty provided by the statute is not lawful. The legislature has the right to, and must, fix penalties in many cases for the enforcement of

the tax laws. It does mean, however, that the tax laws must be so construed as to make their application fair and to avoid arbitrary results. In compliance with these general principles, and in view of the facts of this case, we would be justified under the authorities, if it were necessary to do so, in allowing equitable relief against the enforcement of the penalty here. The courts have frequently, in the exercise of their equitable powers, abated tax penalties under meritorious conditions." 62 Ariz. at p. 246, 157 P.2d at p. 359.

The loss here is, in substance, no different from a penalty. We cannot, for the sole purpose of avoiding a harsh result, construe the statute in any other manner than as we have above. We can, however, afford equitable relief to the Naco School District by application of the maxim that equity will consider as done that which ought to have been done. This has been defined as:

"* * * that where an obligation rests upon a person to perform an act, equity will treat the person in whose favor the act should be performed as clothed with the same interest and entitled to the same rights as if the act were actually performed." Goodell v. Monroe, 87 N. J.Eq. 328, 100 A. 238, 241.

This is particularly true of the act which the board of supervisors here omitted to perform.

"A long established and sound legal principle is that where mere ministerial acts are concerned a court under proper circumstances may look upon that as done which should have been done. This is particularly true where the public interest is directly concerned." State ex rel. Lane v. Chambers (Mo.App.), 353 S.W.2d 835, 839.

The United States Supreme Court, in Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, stated:

"Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved. Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841, 96 A.L.R. 1166; Central Kentucky Natural Gas Co. v. Railroad Commission of Kentucky, 290 U.S. 264, 270–273, 54 S.Ct. 154, 156, 157, 78 L.Ed. 307; City of Harrisonville [Mo.] v. W. S. Dickey Clay Mfg. Co., 289 U.S. 334, 338, 53 S.Ct. 602, 603, 77 L.Ed. 1208; Beasley v. Texas & Pac. Ry. Co., 191 U.S. 492, 497, 24 S.Ct. 164, 48 L.Ed. 274; Joy v. [City of] St. Louis, supra, 138 U.S. 1, 47, 11 S.Ct. 243, 34 L.Ed. 843; Texas & Pac. Ry. Co. v. [City of] Marshall, 136 U.S. 393, 405, 406, 10 S.Ct. 846, 34 L.Ed. 385; Conger v. New York, West Shore & Buffalo R. Co., 120 N.Y. 29, 32, 33, 23 N.E. 983." 57 S.Ct. at p. 601.

So too, here, this Court is constrained to remedy the harm which faces the people of the Naco School District. To do otherwise would be to inflict on those people the very hardship which the legislature sought to avoid.

"Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents. It looks to the substance rather than the form. It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality. And once rightfully possessed of a case it will not relinquish it short of doing complete justice." Merrick v. Stephens (Mo.App.), 337 S.W.2d 713, 719.

The remedy is available. The appropriated funds are in the possession of the respondent and no intervening rights will be trammeled by distribution to the petitioner. However, in keeping with the equities herein involved, the financial aid should be disbursed only in such an amount as would have been required had the board of supervisors actually levied the minimum

tax at twenty cents per one hundred dollars assessed valuation.

We, therefore, hold that it is the duty of the Superintendent to treat the application of Naco School District for "financial assistance" as though the levy of twenty cents per one hundred dollars assessed valuation had actually been made and to supply only the difference between the amount had the levy been made and the balance of the budget in accordance with A.R.S. § 15–1223, subsec. B 4. This procedure will require the school district to register warrants in a sum equal to the additional levy of seventeen cents per one hundred dollars assessed valuation in the district and it will be the duty of the board of supervisors to make a levy for this amount at the appropriate time in order that the warrants so registered may be paid. The school district will thereby be required to pay the minimum amount of twenty cents per one hundred dollars assessed valuation, which we have held to be the intent of the legislature.

This obligation to levy is a continuing obligation as was stated by the Kansas Supreme Court in Board of Education of City of Pratt v. Eubank, 121 Kan. 562, 247 P. 855:

"The amount to be raised is the product of $1,200 multiplied by the number of teachers. It is the duty of the county commissioners to make a levy sufficient to produce that sum. If the county commissioners fail to make a levy sufficient to produce that sum, the county superintendent shall make a suitable levy; that is, a levy suitable to produce that sum. Board of Education [of City of Emporia] v. Shepherd, 90 Kan. 628, 633, 135 P. 605. The Legislature has determined the needs of the schools, the statute is mandatory throughout, and neither the county board nor the county superintendent has any discretion in the matter.

"The duty to raise the county high school fund for 1925 was not performed, was not discharged by partial performance, and continues until a levy is made which will make up the deficit resulting from the insufficient levy."

The alternate writ of mandamus heretofore issued is made peremptory only as to the amount of the state funds as comprise the difference between an amount which would have been raised by a twenty cents per one hundred dollars assessed valuation and the current year budget requirements.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.