Argued April 26; affirmed May 22; rehearing denied
June 26, 1934

## WINSLOW *v.* GILSTRAP ET AL.

(32 P. (2d) 767)

*Roy Harland,* of Salem (S. M. Endicott, of Salem, on the brief), for appellant.

*Allan Carson,* of Salem (Carson & Carson and A. E. Schirman, all of Salem, on the brief), for respondents.

BEAN, J.  The contract was dated in October, 1932. It was provided by the contract that W. C. Winslow and S. M. Endicott agreed to sell to the defendants certain property in Turner, which originally belonged to Cornelia A. Davis.  The purchase price was $2,500, payable $200 on the execution of the contract, and $200 on or before December 1, 1932, and the balance on or before January 1, 1933.  The first two payments were regularly made.  The contract provided that when the balance, $2,100, was due, January 1, 1933, "the parties of the first part (vendors) agree to furnish to the parties of the second part a good and sufficient warranty deed of said premises and an abstract showing the same to be clear of encumbrances".

S. M. Endicott has assigned and transferred his interest in the contract and conveyed his interest in the real estate to plaintiff W. C. Winslow, whom we will hereafter term the vendor.

On the first business day of January, 1933, the vendors were notified that the defendants were ready to consummate the deal, as soon as the vendors' title was shown to be merchantable.  An abstract of title was furnished by the vendors to the vendees prior to the time the balance was due, so that the vendees might obtain a loan with which to pay the balance of the

contract. It is not claimed by the plaintiff that the abstract of title was complete, but the plainiff claims that he is able and willing to perfect the title and furnish an abstract showing the same to be merchantable. So far as the record or abstract of title discloses, the vendors never perfected their title so as to conform to the contract.

Defendants, before the final payment became due, had the abstract examined and the vendors were notified that the same did not show the title to be clear of encumbrances. The attorney who examined the title for the defendants suggested some 14 matters to be shown or changed in the abstract of title, among which was that the description in two of the title deeds was made with reference to a certain barn and a certain wire fence, these not being permanent landmarks; also, that the tax rolls show the taxes were not all paid or eliminated. It appears that a portion of the taxes were ordered cancelled by the county court and plaintiff asserts that the balance was paid, but the record does not yet so show.

There were three deeds from Mrs. Cornelia A. Davis to the Eugene Bible University, one of which conveys five acres in Turner, another conveys a 100-acre tract near Turner, which was to be used to help support the Home for the Needy, and the third deed conveys a 162-foot strip in Turner, on which the Home was built, which, together with the 18 feet of the west end of the five-acre tract, is the property agreed to be sold by the contract. When the Eugene Bible University was ready to build the Home, it decided that the Home should be slightly farther west in order to take it farther from the high school and bring it under some large fir trees. It did not have title to the land on which the trees stood, so it obtained a third deed from Mrs.

Davis, which covered a strip of land 162 feet wide and adjoining the five-acre tract, for which Mrs. Davis had previously given it a deed. For some reason there was no trust provision inserted in this last deed. The Home was built on this 162-foot strip and in accordance with the provisions of the trust contained in the deed to the five-acre tract. The other two deeds contained the following clause:

"The purpose of this deed is for establishment of a home for the needy. The main administration building is to be known as the 'Judith Turner Memorial Home' and a bronze tablet is to be conspicuously placed on said building with letters plainly raised thereon, 'Judith Turner Memorial Home.' Said main building is to be not less than two stories high, with a basement in the clear not less than $7\frac{1}{2}$ feet; said building is to be in dimensions on the ground at least 36 feet by 60 feet. The foundation of said building shall be concrete and the walls shall be either concrete or other fireproof material."

The defendants assert that the Eugene Bible University at all times considered this 162-foot strip as coming under the same provisions as the property conveyed by the other two deeds. The Home was built in 1928 at a cost of $15,000, and was operated as a Home for the Needy until June, 1932, when the Bible University met with financial difficulties and was unable longer to continue the operation of the Home.

In March, 1931, one S. B. Crocker and wife, creditors of the Eugene Bible University, sued the Eugene Bible University in the federal court in Portland and attached the three pieces of property conveyed by the three deeds mentioned and sold what interest the Bible University had in the property on execution sale to S. B. Crocker and wife. It appears that no deed was ever issued pursuant to such sale,

while the plaintiff asserts that the deed can be obtained at any time. He does not claim that one has been issued. Afterwards, July 10, 1931, Nelson Brothers, a corporation, sued the Eugene Bible University and attached the same property and sold the same upon execution. The abstract does not disclose that Nelson Brothers ever parted with what title they may have obtained on the execution sale. Plaintiff, however, claims that a sheriff's deed was executed to Nelson Brothers. On October 19, 1932, Mr. Winslow and Mr. Endicott obtained a quitclaim deed to these various tracts from the Eugene Bible University. The plaintiff contends that he offered to complete the abstract of title and show a good, merchantable title in himself if the defendants would make the final payment or assure him that they could, after the title was so completed. It is clear, however, as far as the abstract of title or record discloses, that the vendor never perfected his title, and the plaintiff practically admits that the, abstract is not such as provided for by the contract and suggests that it may be necessary to institute a suit to quiet title to the property. Plaintiff asserts that the contract was modified so that the land to be conveyed was agreed between him and the defendants to be 162 feet in width instead of 180 feet. On account of this change, $200 and interest up to July 1, 1933, was to be deducted, leaving $1,900 to be paid on the contract.

The defendants contend that plaintiff has not performed his part of the contract, and is not in a position to perform; that he has furnished neither the abstract nor the deed, which, by the terms of the contract, he agreed to furnish.

█ Under an executory contract for the sale of real estate, the vendor is the holder of the legal title, as trustee, for the vendee. When time is not made the

essence of the contract, the vendee is not in default for failure to make the final payment until the vendor tenders a deed and demands payment and performs his part of the contract by offering a good title in accordance with the contract in question and furnishing an abstract of title showing the real property to be free from encumbrances. The vendor cannot sue for strict foreclosure until he has performed, or is able to perform, his part of the contract. In the contract in question, time was not made the essence of the contract. The plaintiff vendor must be ready, willing and able to perform his part of the contract before he can declare the purchaser to be in default. In other words, the covenants contained in the contract are mutual and concurrent: *Coles v. Meskimen,* 48 Or. 54 (85 P. 67); *Frink v. Thomas,* 20 Or. 265 (25 P. 717, 12 L. R. A. 239); *Lockhart v. Ferrey,* 59 Or. 179 (115 P. 431); *Decker v. Jordan,* 79 Or. 109 (154 P. 431); *Ward v. James,* 84 Or. 375 (164 P. 370); *Hawkins v. Rodgers,* 91 Or. 483 (179 P. 563, 905).

The language of Mr. Justice McCamant in the case of *Ward v. James,* supra, at page 384, on petition for rehearing, is quite applicable to the present case. We quote:

"The principle as laid down in the books has its limitations; it is held that when the vendor calls on the vendee to perform his part of the contract the vendor must be able to pass title; Eggers v. Busch, 54 Ill. App. 279, 284. We think that the case at bar falls within the operation of this principle. Plaintiff seeks a strict foreclosure; he asks a decree requiring defendants within a limited time to pay the large sum of money still unpaid on the purchase price and in default of such payment to lose their interest in the property. It is only just to require plaintiff in such case to be able to furnish a good commercial title; the defendants may desire to borrow a part of the purchase price on

the security of the land and they should be given a title adequate for such purpose.''

In *Hawkins v. Rodgers,* supra, a suit for the strict foreclosure of a contract, we find the language of the late Mr. Justice BURNETT, at page 498, et seq., as follows:

''On the other hand, if in fact the plaintiffs did not have title to the land they undertook to convey, they had no standing to declare and enforce a default against the defendants, for the obligations of the parties are mutual and concurrent, and, as in any other such stipulation, neither can enforce a rescission against the other unless he is at the time himself able to perform.''

In *Decker v. Jordan,* supra, the third paragraph of the syllabus reads:

''By the terms of a contract for the sale and purchase of land the purchasers agreed to make payments on the installment plan, and in case of default in payments would work a forfeiture, and vendors were required to deposit in escrow a warranty deed and abstract showing good title, for benefit of purchasers, the two obligations are correlative, and where neither party performs, neither is entitled to enforce the contract or rescind the same.''

■ As said in *Lockhart v. Ferrey,* supra, at page 183, a marketable title means one appearing ''to be such by the record of conveyances or other public memorial. It means that the title must appear of record, and not rest in parol''. Citing cases.

It is contended by plaintiff that the defendants, about May, 1932, refused to further proceed with the performance of the contract. As we understand the record, the defendants were anxious and willing to proceed with the carrying out of the contract if the plaintiff would furnish a good and sufficient title to the premises contracted for, so that they could obtain

a loan for the purpose of making the final payment, which could not be done if it was necessary for plaintiff to take time to perfect his title. However, in discussing the question of waiver by reason of a renunciation of the contract, in *Wells v. Page,* 48 Or. 74 (82 P. 856, 3 L. R. A. (N. S.) 103), it is said:

"But the waiver by refusal to perform goes only to the formal matter of the presentation or tender of a deed or demand of payment; and a vendor of real estate cannot enforce the contract against a vendee who is in default or has repudiated it, unless he himself is in a condition to perform." Citing authorities.

In *Sievers v. Brown,* 34 Or. 454 (56 P. 171, 45 L. R. A. 642), the vendee refused to pay the first installment due on the contract and the court said that his default did not authorize the vendor to declare a forfeiture until he himself was ready and able to convey the premises according to the terms of his bond.

■ Plaintiff assigns as error of the court the refusal to grant the plaintiff a decree of strict foreclosure, contending that a vendee, entering into and obtaining possession by virtue of an executory contract to purchase real property, cannot, while remaining in possession of said premises and not making the payments provided for therein, question the title of the vendor, and is estopped from raising any question with reference to such title. It is clear from the record that the defendants have made all of the payments required to be made until the final payment, at which time, upon making such payment, they were entitled to a good and sufficient deed and an abstract showing a merchantable title to the premises. The cases referred to by plaintiff seem to be cases in which the purchaser was attempting to rescind the contract after he had defaulted in payments.

At the time for the performance of the contract in question, January 1, 1933, or upon the expiration of the time for which the contract was extended, if it was extended, the balance of the purchase price was due from the defendants to the plaintiff. A good and sufficient warranty deed of the premises and an abstract showing the same to be clear of encumbrances were also due at that time from the plaintiff to the defendants. These covenants are mutual and concurrent. The defendants were not in default.

The main case referred to by plaintiff is that of *Sheehan v. McKinstry*, 105 Or. 473 (210 P. 167, 34 A. L. R. 1315). This was a suit for the strict foreclosure of a contract for the sale of real estate. The defendant was in default of two payments of $2,000 each, and interest and he had also failed to pay the taxes upon the land, as provided by the contract. A final payment was not involved. The plaintiff, jointly with his wife, had executed a good and sufficient deed with full covenants of warranty, conveying the premises to McKinstry, and he delivered it to a bank, in escrow, and furnished McKinstry with an abstract of title to the premises, which was examined by an attorney, who suggested that several defects be cured, which was done, and the attorney advised McKinstry that plaintiff had a good and sufficient title to the real estate. The abstract was brought down to a certain date and the contract was executed three or four months later, but the defendant accepted the abstract as sufficient. The facts involved in that case are entirely different from those in the case at bar, and the case is not in point.

In *Sayre v. Mohney*, 30 Or. 238 (47 P. 197), cited by plaintiff, it is said: "If he (the purchaser) would rescind the contract" he must restore the possession. In *Sievers v. Brown*, 36 Or. 218 (56 P. 170) cited by plain-

tiff, the court said: "Before the vendee can elect to rescind the contract he is bound to give up the possession". In the present case defendants are not attempting to rescind the contract.

It clearly appears from the record that the plaintiff is not in a position to convey a good title to the defendants. It is absolutely impossible to tell how long it would take to correct the defects pointed out in the abstract, or, as it might be termed, bring it down to date.

The defendants are not required to pay the amount of the final payment or be put in default at this time without the plaintiff being able to conform to this part of the contract of sale.

It is not essential to consider or discuss any question in regard to the title to the premises, on account of the trust mentioned, or other defects, which may or may not be cured by proper attention, and we express no opinion in regard thereto.

We concur in the opinion of the learned judge of the trial court that the plaintiff is not entitled to a decree of strict foreclosure, and the decree of the circuit court is affirmed.

RAND, C. J., and ROSSMAN and BELT, JJ., concur.