255 P.2d 206

SABIN v. RAUCH et ux.

No. 5706.

Supreme Court of Arizona.

March 30, 1953.

Rehearing Granted May 19, 1953.

V. L. Hash and Virginia Hash, Phoenix, for appellant.

Clarence O. Fehling, Phoenix, for appellees.

WINDES, Justice.

Action by appellees, hereinafter referred to as plaintiffs, against appellant, hereinafter referred to as defendant, wherein plaintiffs seek specific performance of a contract between plaintiffs and defendant concerning the sale and transfer of real estate, which action was consolidated for trial by stipulation with an action by defendant against the plaintiffs for forcible entry and detainer of the same property. Judgment was rendered in favor of plaintiffs directing specific performance of the contract and dismissing defendant's action for forcible entry and detainer.

The fact situation which gives rise to this litigation is that on March 2, 1951, plaintiffs and defendant signed and delivered to the Phoenix Title and Trust Company, a corporation, as escrow agent, instructions wherein plaintiffs were to sell to the defendant certain real property for the consideration of $20,000, the same to be paid by the defendant in the following manner: $14,158.64 thereof by trading to the plaintiffs certain real property then owned by the defendant, and the balance by assuming the payment of $5,841.36, represented to be the approximate unpaid balance due under two certain contracts of sale as evidenced by escrows numbered 58951 and 65693. One of these escrows represented a contract whereby one Stone and wife had sold to one Hill and wife the property defendant agreed to purchase. This contract will be referred to as the Stone contract. The other represented a contract whereby Hill and wife sold their interest therein to one Wray and wife, hereinafter referred to as the Hill contract. These two contracts were duly recorded prior to the transaction involved in this conflict.

Under the escrow instructions between plaintiffs and defendant, plaintiffs, the sel-

lers, agreed to deliver to the escrow agent a deed conveying the property to the defendant. Such a deed conveying the property to the defendant subject to the Stone and Hill contracts was so delivered. On the same day, March 2, 1951, the plaintiffs and defendant signed separate escrow instructions to the Phoenix Title and Trust Company as escrow agent, wherein the defendant as seller and the plaintiff as purchaser agreed to sell and purchase the property of the defendant, which defendant had agreed to trade to the plaintiffs in part payment of the property defendant was purchasing, as aforementioned. The foregoing is rather complicated, but the effect thereof is that the parties executed simultaneous agreements, whereby defendant was to purchase from the plaintiffs property for $20,000 and pay therefor by deeding to the plaintiffs her property and assuming the obligations under the Stone and Hill contracts with a purported balance due thereon of approximately $5,841.36. Possession of the respective properties was exchanged immediately.

Defendant refused to execute the deed for delivery to the escrow agent as agreed, for the asserted reason that the plaintiffs did not and could not convey good and marketable title. The court after trial before a jury ordered defendant to specifically perform by delivering to the Phoenix Title and Trust Company, pursuant to the escrow instructions, a deed conveying to the plaintiffs the property she had agreed to convey. Defendant appeals and makes several assignments to the effect that the court erred in decreeing specific performance for the following reasons: (1) that the plaintiffs could not convey good title to the property they agreed to sell to the defendant; (2) that plaintiffs had an adequate remedy at law for damages; and (3) that defendant discovered new evidence subsequent to the trial upon which the court should have granted the defendant a new trial.

The factual basis of defendant's contention that the plaintiffs could not perform their part of the agreement and convey good title is that plaintiffs' source of title is a deed dated March 18, 1948, from the aforementioned Wray and wife, which deed was subject to the Stone and Hill contracts, the obligations of which plaintiffs assumed. Subsequently and in November, 1948, Hill and wife executed and delivered to one Glick a joint tenancy deed conveying the property to Glick and wife subject to the terms of the Stone and Hill contracts. Thereafter and in December, 1950, Stone and wife executed and delivered a joint tenancy deed conveying the property to one Raney and wife subject to the terms of the Stone contract.

On the date of the execution of the aforementioned escrow instructions by the plaintiffs and defendant, plaintiffs also executed and delivered to the escrow agent assignments of their interest in the Stone and Hill contracts, such assignments providing that defendant was to assume the balances due.

thereon, mentioned in the assignments as aggregating $5,841.36. It will be noted this is the sum defendant agreed in the escrow instructions to pay the plaintiffs as part of the purchase price for the property plaintiffs agreed to convey to the defendant.

Plaintiffs have a warranty deed from Wray and wife conveying the property to them subject to the provisions of the Stone and Hill contracts. It appears from the Stone and Hill contracts that the Phoenix Title and Trust Company is the escrow agent in both of these transactions; that the balances due thereunder are to be paid to it, and that deeds from Stone and Hill have been delivered to the escrow agent for delivery to the purchasers therein when such balances are paid. If the defendant pays the balance due under the Stone and Hill contracts as she agreed, she would receive the deed from the plaintiffs, and she would thereby complete her chain of title from Stone through the intervening purchasers Hill and Wray. Defendant claims that even then the title she would receive would be clouded by the subsequent issuance of the aforementioned joint tenancy deeds to Glick and Raney.

The troublesome question then remaining is whether, when defendant has thus performed and secured this chain of title, she would then have a marketable title. The general rule is that, in the absence of express provision in the contract to the contrary, it is implied that the seller, when the purchaser meets his obligations under the contract, will convey a marketable title; and if it appears that he will be unable to meet this obligation, specific performance will be denied. 49 Am.Jur. 111, Specific Performance, section 95. A marketable title must be free from any reasonable possibility of future litigation which may be necessary to remove apparent or real defects, free from reasonable doubt, and not clouded by any outstanding covenant or conveyance. Hubachek v. Maxbass Security Bank, 117 Minn. 163, 134 N. W. 640. Such a title must appear of record to be marketable. Winslow v. Gilstrap, 147 Or. 374, 32 P.2d 767.

In the fact situation here presented, when the defendant has complied with the decree of the lower court she would have title meeting the test of marketability if the two recorded joint tenancy deeds to Raney and Glick created no cloud thereon or would reflect no possible or apparent interest remaining in the grantees thereunder. The question for the court to decide is not whether the title is good and the purchaser could successfully defend the same in the event it were attacked. The question is whether there is a reasonable doubt that defendant would be hampered in marketing the property she purchased.

A condition precedent to granting specific performance is that there exists no reasonable doubt that the defendant will not be hindered nor obstructed in marketing her property. We think that when the defendant has complied with the present

280

decree her title will be clouded, unless it is adjudged therein that Raney and Glick will have no further interest or unless in some way she is assured that when the contracts are paid she shall receive from them a release of any further interest. Defendant is obligated to make her payments to the escrow agent for the benefit of Stone and Hill respectively. Raney and Glick by virtue of their joint tenancy deeds are no doubt entitled to receive these payments, and if they receive them it would appear they would actually have no further interest in the property; but a possible purchaser, after the Stone and Hill contracts are complied with, we think would hesitate and in fact might refuse to deal with the property until there was some clearance from the grantees under the joint tenancy deeds of any further interest. This would create a situation which does not meet the test of marketable title. We cannot say that these deeds would be merely interloping or stray conveyances. They are conveyances by one having an interest, and the defendant, when she complies with the terms of her contract, is entitled to have either adequate instruments from the grantees under the joint tenancy deeds or a decree which would be the equivalent thereof. The thought that the grantees under these deeds should have been made parties under the principle that all persons who will be affected by the decree must be brought into the litigation, is valid for the reasons announced.

Defendant contends that plaintiffs had an adequate remedy at law for damages and the court could not, therefore, legally decree specific performance. The general rule is that when the subject matter of the litigation is a contract to convey real property, unless there is some other equitable reason to prevent, the court may assume the inadequacy of damages as ₁a remedy without the necessity of a showing to that effect. 49 Am.Jur. 107, Specific Performance, section 92. The answers to the interrogatories submitted to the jury refute the contention that there is anything inequitable or unconscionable in requiring specific performance. The trial court has a wide discretion in this matter of adequate remedy at law in contracts concerning the sale of real estate. Kimball v. Statler, 20 Ariz. 81, 176 P. 843. It does not appear that the trial court abused its discretion.

One of the grounds for a new trial is that immediately after the trial the property was sold under paving liens created by the zoning regulations of Maricopa County. This motion was supported by an affidavit of defendant that following the trial she discovered there were certain of such liens fastened on the property and the same had thereafter been sold thereunder. The affidavit makes no showing concerning the diligence of the defendant to discover these facts.

Presumably the paving was done under the provisions of some regulation of the board of supervisors of Maricopa County,

pursuant to purported authority given the board under the provisions of Sections 17–1901 to 17–1918 inclusive, 1952 Cum.Supp., A.C.A.1939. We know nothing concerning the regulation, when the paving was done, or when the lien, if any, attached. It does appear, as we interpret the contract under which defendant purchased, that at the time the deal was made and the defendant took possession of plaintiffs' property there were no paving liens thereon. It also appears from the brief of defendant that the paving assessments became due and payable November 1, 1951.

■■■■ To secure a new trial upon the grounds of newly discovered evidence. It must appear that the purported evidence is such as would probably change the result should the new trial be granted, and it must also appear that such evidence could not have been discovered before the trial by the exercise of due diligence. 39 Am. Jur. 165, New Trial, sections 158 and 160. The affidavit must show not only that the defendant did not know of the evidence relied upon but must also show that diligence was used in an effort to discover the same. Sharpensteen v. Sanguinetti, 33 Ariz. 110, 262 P. 609. 39 Am.Jur. 170, New Trial, section 163.

Eight months went by from the time defendant took possession and the liens became due. It is not only possible but probable that such paving was done during the time the defendant possessed the property of the plaintiffs. If such were true, certainly she was guilty of lack of diligence in not discovering the liens. In any event, no showing is made that she used diligence. Likewise we think defendant should have made a showing as to when the liens attached to enable the court to judge whether they affected the rights of the parties. It was the obligation of defendant, in seeking a new trial, to present a fact situation that, if true, would show not only diligence of the defendant but also an obligation on the part of the plaintiffs to satisfy such liens, in order that the court might judge whether such evidence warranted a new trial and might cause a different result if a new trial were granted. A motion of this character calls for the exercise of discretion on the part of the trial court, Schuster v. Schuster, 42 Ariz. 190, 23 P.2d 559, and there were not sufficient facts presented to enable the court to exercise a sound discretion in granting a new trial.

■■■■ It would be inequitable to deny the plaintiffs relief without giving them an opportunity to remove the doubts concerning marketability of title which we hold to exist. If the impediment can be removed or removal thereof assured the defendant, the plaintiffs would be entitled to the decree which the trial court has rendered; otherwise defendant may not be required to perform.

The case is therefore reversed and remanded for the purpose only of permitting the plaintiffs, if possible, to rectify the title

282

defects, and to that end, if plaintiffs desire, the court is directed to make the grantees under the joint tenancy deeds or any others having an interest thereunder parties to the litigation.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.