484 P.2d 668

**Marion W. TURLEY and Fern Turley, his wife, Appellants,**

v.

**Louis J. ADAMS and John V. Cowgur, Appellees.**

**No. I CA-CIV 1172.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 10, 1971.

Rehearing Denied June 15, 1971.

Review Denied July 13, 1971.

**516**

Killian & Legg by John G. Hough, Mesa, for appellants.

Skousen, McLaws & Skousen, P. C. by Richard E. Skousen, Mesa, for appellees.

STEVENS, Presiding Judge.

Louis J. Adams and John V. Cowgur, hereinafter referred to as the plaintiffs or Adams and Cowgur, brought this action in Maricopa County Superior Court against Marion A. Turley and Fern Turley, his wife, hereinafter referred to as the defendants or the Turleys. The plaintiffs sought a declaration of a constructive trust in their favor on property owned by the defendants and an order to show cause why an injunction should not be issued against the defendants enjoining them from disposing of the property in any way; enjoining the defendant Marion Turley from changing his will in any way in violation of an oral agreement with the plaintiffs; and enjoining the defendants from preventing the plaintiffs from performing their part of the agreement; and from interfering with the plaintiffs' possession of the property in question. The plaintiffs also urged that the defendant Marion Turley be ordered to change a will he had made which was in violation of the oral agreement.

The lawsuit concerned an oral agreement entered into by Marion Turley, who owned a farm and dairy located between Tempe and Mesa, Arizona, and his deceased wife, Lola, and Adams and Cowgur who have worked on and operated the farm and dairy property since the early 1950's. In the agreement Marion and Lola Turley promised that the farm, the land, the dairy, and the cattle would be given to Adams and Cowgur when the Turleys died if Adams and Cowgur would operate the business and take care of and provide the Turleys with a good living during the remainder of their lives.

In 1951 the defendant, Marion Turley, approached Cowgur and proposed that he come to work for him. The defendant had become acquainted with Cowgur while he was working for another farmer in the area and running an independent combining operation. Cowgur was then in his early twenties and the defendant promised him a monthly salary and that he would "set him up in farming." At that time the dairy operation had been sold and was being operated by the buyer.

The defendant, Turley, repurchased the dairy operation in 1955 because it was being operated on a losing basis. He did this to protect the funds that he had advanced to the operator. The defendant then brought in his first wife's nephew to run the dairy, but this arrangement failed to work out as the operation continued to go into further decline. At that time the defendant contacted Adams who was working full time as the Executive Secretary of the Cochise County Farmers Association in Southern Arizona. Adams had earned a degree in animal husbandry at Utah State University and held a vocational agriculture certificate and a secondary teaching certificate. The defendant pointed out to Adams that he and Lola had no children and if he would take over the dairy operation, make a go of it and provide an income for them for the rest of their lives, they would leave the dairy operation to him when they both died. Adams accepted this proposition and moved to Mesa, Arizona.

When Adams went to work both he and Cowgur met with the defendant and entered into the agreement whereby Cowgur would run the farming operation and Adams would operate the dairy and together give the Turleys a good living in return

for their promise to give them the farm and dairy upon the Turleys' deaths. They also agreed that the profits would be split 50% for the Turleys and 25% each for Adams and Cowgur. Adams and Cowgur began operating the farm and dairy pursuant to their oral agreement with the defendant. The defendant had a written document prepared, designated as a lease, which defined the terms of the distribution of the income and the responsibilities of Adams and Cowgur as to the operation of the farm and dairy, and asked them to sign it. The lease was modified several times subsequent to the signing and at times thereafter the plaintiffs were assured by the defendant that the written lease and changed circumstances would have no effect on their oral agreement.

Prior to the time that the plaintiffs assumed the operation of the farm and dairy, Marion Turley was in poor health and had been advised to withdraw from farming completely. He had made identical propositions to others prior to the time that the plaintiffs began running the farm and dairy but they had been unwilling to take the responsibility or were unable to put the operation on a paying basis. After the plaintiffs began operating the farm and dairy, productivity increased and more land was leased and put under cultivation. Profitability of the operation increased dramatically. When plaintiffs appeared on the scene, the farm and dairy were in such poor condition that the work required to put them on a profitable basis was more than that which one would expect from an ordinary farm hand or foreman. One witness, who had worked for the Turleys before the plaintiffs, testified that he had worked sixteen hours a day for nearly five years and after that experience he didn't care if he ever saw the place again.

During their period of association with the defendant and his first wife, the plaintiffs and their families grew very close to them and they were taken into the family circle. Holidays were spent with the Turleys and the men went hunting with Marion on many occasions. The defendant often told people that he was more than pleased with what the plaintiffs had done with the farm and dairy and that he did not believe anyone would have worked so hard if they did not have a stake in eventually inheriting the place. The plaintiffs were treated as "sons", and the defendant often referred to them as "his boys." The plaintiffs were invited to live on the farm. One of them was given land on which to build a house and the other moved into the defendant's house when he moved to another residence. The defendant obtained an insurance policy on Cowgur's life and attempted to secure a policy on Adams' life, but he was found to be uninsurable.

The value of the land increased dramatically during the plaintiffs' tenure. The increase in value of the farm was not solely attributable to their efforts in making the farm more profitable. The growth of the surrounding area had served to increase the value of all the land in the whole area.

After Lola Turley died in 1963, the defendant married his present wife, Fern. His relations with old friends and the plaintiffs deteriorated until he had little or no contact with them. Fern dealt with the plaintiffs on business matters. The defendant's health deteriorated accompanied by his advanced age. He spent some time in the hospital. After his second marriage the plaintiffs were again assured that the agreement would be the "same as before." However, the defendant subsequently executed three wills, each one giving his wife, Fern, a larger share of his property on his death and if she predeceased him, her children from other marriages. The defendant and his first wife had executed mutual wills leaving the property to the plaintiffs.

In 1968 the defendant, Fern Turley, attempted to force the plaintiffs off the land by giving them notice that the written lease was being terminated. There was no indication that they were not satisfactorily performing under the oral agreement. The plaintiffs then brought this action to define and protect their rights under the oral agreement.

**518**

The cause was heard by the court sitting with an advisory jury. At the close of the trial, at which a great quantity of testimony was presented, the court instructed the jury and submitted seven interrogatories to them. The jury answered all of them unanimously in favor of the plaintiffs and the court adopted them as its findings of fact. Each of these will be discussed as they pertain to the points raised on this appeal, always bearing in mind the principle that unless they are clearly erroneous and not supported by the evidence, this Court may not substitute its own judgment.

The defendants have raised four issues in their appeal: The trial court was in error in allowing parol evidence as to the oral agreement between the parties; the oral agreement to make a will was within the statute of frauds and its enforcement was barred; *quantum meruit* is the correct remedy in this case since the value of plaintiffs' services can reasonably be determined; the plaintiffs failed to prove by clear and convincing evidence the elements which, in Arizona, are necessary for the imposition of a constructive trust.

■ Prior to the trial the defendants contended that the document designated as a lease set forth all of the engagements and relations of the parties and that any evidence of the oral agreement of the parties entered into prior to the written agreement which were inconsistent with and contradictory to the written agreement was inadmissible. They urge on appeal that the admission of evidence of the oral agreement contravened the parol evidence rule and was reversible error. The rule has been set forth by the Arizona Supreme Court in Richards Development Company v. Sligh, 89 Ariz. 100, 358 P.2d 329 (1961):

> "The parol evidence rule, * * * excludes the use of parol evidence to add to, subtract from, vary or contradict the terms of a complete and unambiguous written contract. (Citations omitted.) It is a substantive rule of law rather than an evidentiary rule. (Citations

omitted.)." 89 Ariz. at 101, 358 P.2d at 330.

The trial court held a pretrial hearing on the defendants' motion to limit the testimony of the oral agreement of the parties which took place prior to 31 December 1957. The court heard the defendants' offer of proof in connection with their motion and the testimony of the plaintiffs pertaining to any oral agreements prior to the time of the lease dated 31 December 1957. It was then ordered denying the defendants' motion.

During the trial, evidence of the oral agreement was admitted. Extrinsic evidence is admissible to show that it was not the intention of the parties that the entire agreement be incorporated in the written agreement or that there was a separate agreement dealing with different subject matter. Whether the writing was intended to embody all of the agreement between the parties is in itself a question for the trier of fact. Before the parol evidence rule may be invoked, there must first be a determination that there has been an integration of an agreement into a writing or writings. Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 365 P.2d 476 (1961). See also Jamison v. Southern States Life Insurance Company, 3 Ariz. App. 131, 412 P.2d 306 (1966). The conclusive presumption, which the defendants urge arose because there was a writing under the case of S. H. Kress & Company v. Evans, 21 Ariz. 442, 189 P. 625 (1920), only comes into operation when the court can determine as a matter of law that the writing on its face imports a legal obligation without any uncertainty as to the object or extent of such engagement. We have, as the trial court did, the written agreement before us. The agreement does not purport to be, nor is it clearly the embodiment of all of the engagements or relations of the parties and the presumption urged on the trial court and on this Court does not come into effect.

It was necessary for the trial court to consider the extrinsic evidence to deter-

mine whether the lease agreement was in fact a complete statement of all of the parties' engagements. In our opinion it was not error for the trial court to consider the plaintiffs' evidence that they had entered into an agreement with Marion and Lola Turley dealing with the disposition of the farm at the time of the Turleys' deaths.

After presentation of all of the evidence, the advisory jury answered the interrogatory in the negative as to whether the lease as amended with regard to rental draws and cull cattle contained the total agreement between the parties. The trial court adopted this as a finding of fact and the evidence in the record supports this finding. We cannot say that it was clearly erroneous.

The agreements exist side by side. The lease grants the plaintiffs a tenancy from year to year, describes the division of profits and how the management of the farm is to be carried out. The oral agreement dealt with the title to the property. It provided, in substance, that the plaintiffs were to receive the title to the farm upon the deaths of Marion and Lola Turley if the plaintiffs provided them with a suitable income from the farming operations during the Turleys' lifetimes. Under these circumstances the parol evidence rule would not operate to exclude evidence of the oral agreement since it in no way sought to add to, subtract from, vary or contradict the written lease agreement. The complete integration of the one would not prevent proof of the other by parol evidence. It is our opinion that the oral agreement was fully established.

█ It is not disputed that the plaintiffs were seeking to invoke the powers of the trial court to protect their interest under an oral agreement to make a will. An oral contract to make a will is not enforceable under the provisions of A.R.S. § 44–101, Statute of Frauds, unless there are circumstances which would take the agreement out of the provisions of the statute. The question of whether the statute of frauds

would prevent relief from being granted in this case is inextricably bound to the type of relief being sought.

The partial performance of an oral agreement to make a will will not serve to remove the agreement from the statute of frauds when damages are sought for the breach of the agreement or where a recovery for the breach of the agreement is sought on the basis of *quantum meruit*. Evans v. Mason, 82 Ariz. 40, 308 P.2d 245 (1957). However, in the case of Remele v. Hamilton, 78 Ariz. 45, 275 P.2d 403 (1954), where the action was in the nature of an equitable bill *quia timet*, the Arizona Supreme Court held that full performance by the promisor, making a will, and full performance by the promisee, except insofar as she had been prevented from performance by the promisor's guardian, would take the agreement out of the statute of frauds.

In our opinion this case is controlled in large part by the principles applied in the Remele case. There is the factual difference that the defendant here had made a series of wills which left the property to his second wife and her children, while in the Remele case the defendant had merely threatened to change his will by excluding the plaintiff.

There was testimony in the trial court that the defendant, Marion Turley, and his first wife, Lola, had executed reciprocal wills on 7 July 1958 devising the farm to the plaintiffs when the survivor died. Lola Turley's will was admitted into evidence, but Marion Turley's first will could not be produced by either party. The advisory jury found that Marion Turley had executed a will containing the same basic provisions as Lola's will on 7 July 1958, and the trial court adopted this as a finding of fact. The evidence in the record supports this finding.

A will is ambulatory and takes effect only at the death of the testator. There could be no complete performance by Mar-

**520**

ion Turley, after the death of Lola Turley, until his death. At that time under the agreement between the Turleys and the plaintiffs the farm would pass to the plaintiffs. On the other hand, the plaintiffs have completely performed their part of the agreement to the apparent satisfaction of all concerned. The trial court found that their performance was solely and unequivocally pursuant to the oral agreement. The plaintiffs stand ready, willing and able to continue their performance unless prevented from doing so by the defendants. It is significant in this respect to note that when the plaintiffs were told that their services would no longer be required it was not the grounds that they had performed unsatisfactorily.

Where there has been complete performance by one of the parties to an agreement, the law is well settled that the agreement is removed from the operation of the statute of frauds. In re MacDonald's Estate, 4 Ariz.App. 94, 417 P.2d 728 (1966). The performance by the plaintiffs up to the present, coupled with the willingness to continue their performance upon the agreement unless prevented from doing so, falls within the ruling of the Remele case and serves to remove the oral agreement from the statute of frauds for the purpose of granting the equitable relief to which the plaintiffs are entitled. Equity will not permit the defendants to knowingly allow the plaintiffs to invest their time, labor and money in the farm in reliance upon an agreement which does not exist.

There was testimony in the trial court that the plaintiffs have faithfully performed for a period of twenty years, doing work above and beyond that which would be required in an ordinary employment or share lease agreement. There was also evidence that they did not draw all of their share of the profits, but allowed them to be invested in the improvement of the farm and dairy operation.

It is our opinion that where upon the whole case, the trial court is satisfied that an agreement was made and is being per-formed by the plaintiffs, an equitable remedy follows as a matter of course.

█ The remaining issue facing this Court is whether on the whole case the constructive trust is the appropriate remedy. The defendants have urged that the plaintiffs have been paid for their services over the years and that what entitlement is remaining may be adequately provided under a theory of *quantum meruit*. This theory of recovery is applicable when a value can reasonably be placed on the services rendered. See Tucker v. Reil, 51 Ariz. 357, 77 P.2d 203 (1938). The trial court found that on all of the evidence a reasonable value could not be placed on the services of the plaintiffs. We are unable to find on review of the record that the finding of the trial court was clearly erroneous. There is the further consideration that land is unique. The services which the plaintiffs performed were not intended to be compensated for by money. The intended compensation was that the plaintiffs were to have the farm and dairy and this was understood when the agreement was made. In Sabin v. Rauch, 75 Ariz. 275, 255 P.2d 206 (1953), modified on rehearing, 76 Ariz. 71, 258 P.2d 991 (1953), in respects not material to this opinion, which was an action for specific performance of a contract to sell real estate, the Arizona Supreme Court adopted the following principle:

"The general rule is that when the subject matter of the litigation is a contract to convey real property, unless there is some other equitable reason to prevent, the court may assume the inadequacy of damages as a remedy without the necessity of a showing to that effect.

\* \* \* \* \* \*

The trial court has a wide discretion in this matter of adequate remedy at law in contracts concerning the sale of real estate." 75 Ariz. at 280, 255 P.2d at 209.

We recognize the distinction between this action and one for specific performance of a contract to buy or sell real estate. We

believe this principle to be equally applicable in the instant case. This is not an action for damages for breach of contract but an action seeking equitable relief from defendants' actions which would place the plaintiffs in the position of being unable to attain complete performance under the oral agreement.

The trial court properly found that specific performance would not be a proper remedy in that there had not been complete performance. However, a court of equity is bound to devise a remedy when a party has plead and proven facts that show he is entitled to one. Sanders v. Folsom, 104 Ariz. 283, 451 P.2d 612 (1969). The trial court found that the plaintiffs could not be adequately compensated by money damages. It is apparent that specific performance is not a proper remedy.

In this situation the trial court was faced with shaping a remedy which would be appropriate for this peculiar set of facts and afford complete relief. It found that injunctive relief which had been granted in the Remele case would be inadequate. In that case the promisor had executed a will and threatened to change it and there was attempted interference with the promisee's performance. An injunction was adequate to preserve the *status quo*. In the case before us the promisor has changed his will thereby allowing the court to infer that he had repudiated the agreement. The form of the judgment indicates that title to at least a portion of the property had been transferred to the co-defendant Fern Turley.

█ The trial court being without power to order the defendant to alter his will and faced with a transfer of a portion of the property determined that an injunction against transfer of the property and interference with the plaintiffs' performance would *pro tanto* provide only partial relief. It is our opinion that under these circumstances the trial court properly imposed a trust upon the property for the purpose of protecting the plaintiffs against injury from the defendants' breach of the agreement.

The appellants have urged that this Court must adhere to narrow requirements for the imposition of a constructive trust and that these essential elements were not present in this case. The requirements which the defendants urge are not present are fraud, actual or constructive, or a confidential relationship between the defendants and the plaintiffs. In Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286 (1958), the Arizona Supreme Court expressed the following view on constructive trusts:

"Even where actual fraud does not exist in the acquisition of property, a constructive trust will arise whenever the circumstances make it inequitable that the property should be retained by the one who holds the legal title. (Citations omitted). The forms and varieties of these trusts are practically without limit and *the principle is applied whenever it is necessary for the obtaining of complete justice.*" (Emphasis supplied.) 85 Ariz. at 123, 124, 333 P.2d at 290.

No cases arising in Arizona have been called to our attention in which a constructive trust has been imposed in circumstances similar to the case at bar. In many of the cases presented to us for our consideration in this matter the courts were able to find on the facts of each case that there had been actual or constructive fraud or the breach of a fiduciary or confidential relationship which permitted them to find that a constructive trust had been imposed.

However, this does not preclude a court of equity from adopting the most appropriate remedy. It is impossible and perhaps undesirable to reconcile every case and arrive at a common factual denominator upon which to grant or deny a remedy. Each case must be determined on its own set of facts, and equity must be able to fashion the relief to the unique facts of the particular case with the sole concern of effectuating justice.

We have looked to sister jurisdictions in an effort to determine how questions of this nature have been resolved and find that the remedies are as varied as the facts of the cases in which they are discussed. Of those jurisdictions that have imposed a constructive trust in similar situations the court in its syllabus for Matheson v. Gullickson, 222 Minn. 369, 24 N.W.2d 704 (1946), expressed the following view:

"Although specific performance does not lie during the lifetime of the promisor, a court in the exercise of its equity jurisdiction may render analogous relief for the preservation of the rights of the promisee under an oral contract to bequeath property left at the promisor's death to protect the promisee against loss from the promisor's breach or threatened breach of contract, and for this purpose the court may impress the promisor's property with a trust in favor of the promisee, subject, however, to the rights of the promisor to consume or dispose of such property during his life, except insofar as a disposition thereof may be a fraud upon the promisee." See Annot., 7 A.L.R.2d 1166 (1949).

The defendants urge that at least six requirements must be met before the courts may impose a constructive trust in this case if this Court determines that it will adhere to the less restrictive criteria for the imposition of the trust remedy. The six requirements are: (1) change of position; (2) performance attributable solely to promise; (3) services cannot be measured monetarily; (4) have not been adequately compensated and cannot be by *quantum meruit*; (5) unjust enrichment of defendants; (6) unconscionable result. The defendants submit that these requirements were not proven by clear and convincing evidence which is required before a constructive trust may be imposed. Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955); Smith v. Connor, 87 Ariz. 6, 347 P.2d 568 (1959). As we have stated pre-

viously, the trial court was sitting with an advisory jury. Findings of fact were made on each of the above-stated points with the exception of a finding as to change of position by the plaintiffs. All of the findings favored the plaintiffs. In the Murillo case the Arizona Supreme Court quoted with approval from Paulsen v. Coombs, 123 Utah 49, 253 P.2d 621, 624, the following:

" 'The question of whether evidence is sufficient to be clear and convincing is primarily for the trial court; his finding should not be disturbed unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing.' "

The Arizona Supreme Court went on to say:

"Our duty, on appeal, begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might reasonably have reached the same conclusion which was reached." 79 Ariz. at 9, 281 P.2d at 791.

From our examination of the record it is our opinion that the trial court had before it evidence which was sufficiently clear and convincing to support the findings of fact which were made.

As to the lack of a specific finding that there was a change of position we note that the trial court did not negative such a finding. We have reviewed the record and it is our opinion that such a finding would be supported by the evidence. If there is substantial evidence from which the trier of fact could have found for the successful party, a reviewing court must sustain the judgment. 16 A.R.S., Rules of Civil Procedure, Rule 52; City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P.2d 722 (1969).

We hold that where such an agreement as was here shown, was made on consideration that the plaintiffs carry on the oper-

ations of the farm and dairy, devoting their full time and total energies to that end, and provide a generous income for the defendants, and where for a period of years the plaintiffs have faithfully performed their part of the agreement and are ready, willing and able to continue to do so and have done nothing to render a continuance of the relations of the parties impossible, there is no obstacle to equitable relief; that plaintiffs' performance takes the agreement out of the statute of frauds, and the trial court properly decreed that the defendants are constructive trustees for the plaintiffs.

Affirmed.

CASE and DONOFRIO, JJ., concur.