505 P.2d 1052

Marvin A. BROCK and Louise Brock, husband and wife, Appellants,

v.

Michael D. JERNIGAN and Rebecca A. Jernigan, husband and wife, Appellees.

No. I CA–CIV 1551.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 6, 1973.

Rehearing Denied March 7, 1973.

Review Denied April 3, 1973.

---

Thaddeus G. Baker, Yuma, for appellants.

Byrne, Green & Ellsworth by Joe L. Green, Yuma, for appellees.

HAIRE, Judge.

The litigation which led to this appeal concerns the rights and obligations of the parties to a contract for the sale of two lots situated near the Colorado River in Yuma County, near Ehrenberg, Arizona.

The appellees (buyers) entered into a contract dated February 15, 1965 whereby they agreed to buy from appellants (sellers) parcels no. 33 and no. 34 of the Sour Dough Tract, a plat of which was attached to the contract of sale. By the terms of the contract, upon payment by the buyers of the full purchase price, the sellers agreed to deliver to the buyers "a good and sufficient *grant deed* conveying the land herein described to the buyer, his heirs, devisees, or assigns, *free and clear of all encumbrances made, done or suffered by the seller,* reserving and excepting to the seller an easement four feet wide measured from the rear property line of each parcel for water, sewer, or other utility lines, mains or poles." (Emphasis added).

The rights of the parties in the litigation which subsequently developed depend primarily upon the extent of the obligation imposed upon the sellers under the above-quoted contractual provision. In essence, the buyers contend that the sellers were required under the above-quoted contractual obligation to give them a "marketable title", the same as though the contract called for a good and sufficient warranty deed free and clear of all liens and encumbrances.

The subdivision known as the Sour Dough Tract is located approximately one-half mile east of the stream of the Colorado River in Section 10, Township 3 North, Range 22 West Gila and Salt River Base and Meridian. The tract is riverbottom land located approximately 3,000 feet west of the old Meander Line of the Colorado River. The sellers trace their title to the land to a patent issued by the United States of America on February 19, 1934, to one McCormick, said patent comprising Lot 2, Section 11, Township 3 North, Range 22 West, G & SRB & M. The last official government survey of the area was completed on February 5, 1917, and indicates the west boundary of Lot 2, Section 11, as the east Meander Line of the Colorado River. The disputed lands in the Sour Dough Tract lie immediately adjacent to this patent, and are allegedly accretion lands.

When the buyers had paid approximately one-third of the purchase price for the two lots, they apparently became concerned as to the quality of title they might receive upon payment in full. They filed a complaint in the Yuma County Superior Court, which initially consisted of two causes of action. The first cause of action alleged the depositing with the clerk of the court of the balance of the purchase price, and requested that the sellers be required to specifically perform the contract, with the balance of the purchase price "to be delivered to [sellers] upon delivery to [buyers] of the grant deed conveying *good fee simple title . . . free and clear of encumbrances*". (Emphasis added). Alternatively, if specific performance was not possible, then the buyers requested damages in the amount of $3,000, being approximately the amount they had previously paid on the contract plus the value of improvements placed on the premises by the buyers.

The second cause of action was for alleged fraudulent misrepresentations made by sellers, and stated:

"That in order to induce Plaintiffs to purchase said property described therein, Defendants falsely and fraudulently and with intent to deceive and defraud Plaintiffs represented that they were the owners of said land in fee simple and had the right to convey good fee simple title

to said land to said Plaintiffs upon the payment of said purchase price stated therein."

In the second cause of action, the buyers prayed for judgment for their actual damages in the amount of $3,000, for punitive damages in the amount of $5,000, and for attorneys' fees in the amount of $1,000.

In their answer to the complaint, the sellers denied the allegations of the second cause of action pertaining to fraudulent misrepresentations, and in answer to the first cause of action alleged a willingness to deliver to the buyers "a grant deed . . . in accordance with the agreement" upon payment to them of the balance of the purchase price.

The sellers then proceeded to take the depositions of the buyers, and based thereon filed a motion for summary judgment. Shortly thereafter the buyers filed a motion to amend their complaint to add a third cause of action, essentially identical to the first cause of action, except that they now alleged that by the terms of their agreement, the sellers "agreed to convey to [buyers] *a fee simple title or a good marketable title to said land* free and clear of encumbrances."[1] (Emphasis added).

On February 18, 1970, the trial judge entered a formal written "Decision" concerning the sellers' motion for summary judgment. In this "Decision" the trial judge concluded that under the agreement the sellers were obligated to furnish to the buyers a "marketable title". The trial judge then stated, in part, as follows:

"I take judicial notice that the meander line of the Colorado River has changed considerably since the Land Office plat of 1919, and the fact that the land in question does not appear on that map in no way negates that the land exists and is in Yuma County. In fact, under the most recent compact with California I have no doubt that the land is in Yuma County and this judicial notice extends to the fact that there has been much litigation in the court over land of the type herein involved, commonly called 'riverbottom land'.

"The basic principle applicable to this situation is that if the land is formed by accretion, it belongs to the owner of the immediately adjacent tract. In this case it would belong to the sellers. If the land is formed by avulsion, it would belong to the United States Government.

"I ruled in case No. 26566, Lamb v. Brock, that I would not attempt to adjudicate whether land in this same tract was accretion or not for the reason that such adjudication would not be binding on the United States and would, in fact, solve nothing.

\*     \*     \*     \*     \*     \*

"The government has made no move to oust anyone and it is not certain it could successfully do so. . . . I have already taken judicial notice of the unusual, probably unique, situation that exists with respect to this riverbottom land in Yuma County. The title can never be settled without Federal action at the highest levels."

While expressly recognizing in his "Decision" that from the buyers' depositions it appeared that the buyers would not be able to prove any allegations of fraud, the trial judge refused to grant summary judgment for the sellers on the fraud cause of action. He then extended to the *buyers* a rather anomalous set of three "options", as follows:

"1. They may pursue their damages on the theory of actual fraud and endeavor to establish such fraud by testimony. If successful they can recover back the purchase money paid and also the money laid out for improvements insofar at least as such enhances the value of the land.

"2. They may elect specific performance with the abatement of the purchase price by reason of the cloud on the title.

---

1. We find no indication in the record that the trial court ever ruled on this motion to amend.

The amount of such abatement will have to be determined by trial.

"3. They may elect to keep the matter in its present status; retain possession without the payment of any further sums until the question of title of the Federal government is determined and then have such action for damages or for specific performance as may at that time be appropriate. Whether equity requires that they recover all or any part of the purchase price already paid by them pending the day when the title situation will be known must be determined by evidence. In any event they are entitled to recover their costs herein and to have their rights spelled out by the judgment."

Subsequently, the buyers chose Option 3, and a formal written judgment was then entered, which directed in part, as follows:

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED as follows:

"1. That the Clerk of this Court return to Plaintiffs [buyers], or their attorneys, the sum of $1,577.22, heretofore deposited by the Plaintiffs.

"2. That the Plaintiffs may remain in the possession of Lots 33 and 34 in the Sourdough tract without further payments until such time as the Defendants [sellers] shall procure a merchantable title to said premises.

"3. If the Defendants can procure merchantable title to said premises, they are ordered to convey said property to the Plaintiffs upon payment of the sum of $1,577.22 without further interest. Plaintiffs are not entitled to damages in such event and must tender the $1,577.22 within Six months after the Defendants can convey merchantable title and so advise or they must leave the premises.

"4. That should Plaintiffs be evicted from the land by the United States Government or anyone, or should Plaintiffs be required to spend money to defend their right, title and interest in said land,

the question as to what damages, if any, they may be entitled to is not determined by this judgment, but the Court reserves jurisdiction to determine said question if, and when, the same may arise.

"5. If, by government action, it becomes legally possible for Defendants to procure a merchantable title and they refuse or fail to do so, Plaintiffs are then entitled at their option to specific performance so they may get such title themselves from the government or to damages or to both.

"6. If Plaintiffs are never evicted and Defendants are unable to obtain merchantable title, and the matter remains indefinitely in status quo, then the Plaintiffs are entitled to recover the money paid in already but not entitled to further damages. Plaintiffs may make such a motion if they are ready to abandon the land improvements at any time."

The buyers state as the first question presented for review the following:

"1. Does the agreement of the Defendants to deliver to the Plaintiffs a good and sufficient Grant Deed conveying the land in question to the Plaintiffs impliedly warrant that Defendants have a good marketable title, or a good fee simple title to said land and obligate them to convey a good fee simple title thereto?"

In our opinion the answer to this question is in the negative, and for that reason the judgment entered by the trial court must be reversed. In determining that the contract of sale required that the sellers furnish marketable title, the trial judge relied upon Sabin v. Rauch, 75 Ariz. 275, 255 P.2d 206 (1953), wherein the Arizona Supreme Court stated:

"The troublesome question then remaining is whether, when defendant has thus performed and secured this chain of title, she would then have a marketable title. The general rule is that, *in the absence of express provision in the contract to the contrary*, it is implied that the seller, when the purchaser meets his

obligations under the contract, will convey a marketable title; and if it appears that he will be unable to meet this obligation, specific performance will be denied. 49 Am.Jur. 111, Specific Performance, section 95. A marketable title must be free from any reasonable possibility of future litigation which may be necessary to remove apparent or real defects, free from reasonable doubt, and not clouded by any outstanding covenant or conveyance. Hubachek v. Maxbass Security Bank, 117 Minn. 163, 134 N.W. 640. Such a title must appear of record to be marketable. Winslow v. Gilstrap, 147 Or. 374, 32 P.2d 767." (Emphasis added). 75 Ariz. at 279, 255 P.2d at 208.

Unquestionably, the foregoing states the correct principles applicable to a contract of sale of real property "in the absence of express provision in the contract to the contrary". In the contract under consideration, the parties have expressly provided to the contrary—the sellers' obligation is to deliver to the buyer "a good and sufficient *grant* deed conveying the land . . . free and clear of all encumbrances made, done or suffered by the seller". This language of the contract cannot be disregarded—the buyers did not contract for a warranty deed, nor did the parties leave a void in the contract to be filled by implication through the application of the general principles stated in Sabin, *supra*.

A.R.S. § 33–435, subsec. A provides as follows:

"A. If the word 'grant' or the word 'convey' is used in a conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants and none other, on the part of the grantor for himself and his heirs, to the grantee and his heirs and assigns, are implied unless restrained by express terms contained in the conveyance:

"1. That previous to the time of execution of the conveyance the grantor has not conveyed the same estate or any right, title or interest therein, to any person other than the grantee.

"2. That the estate is at the time of execution of the conveyance free from encumbrances."

Taking into consideration the express language used by the parties in their contract, it is our opinion that the above-quoted statute negates any contention that the sellers are impliedly obligated to furnish "marketable" title as that term is defined in Sabin v. Rauch, *supra*.

The buyers rely upon the provisions of A.R.S. § 33–432, subsec. A which read as follows:

"A. Every estate in lands granted, conveyed or devised, although other words necessary at common law to transfer an estate in fee simple are not added, shall be deemed a fee simple if a lesser estate is not limited by express words or does not appear to have been granted, conveyed or devised by construction or operation of law."

From this statute, the buyers argue that under the contract in question it must be presumed that the parties intended that the sellers were to convey a fee simple title, and that a fee simple title is equivalent to a marketable title. We disagree. The buyers have made the serious mistake of confusing "estates" in land with the concept of marketable "title". A.R.S. § 33–432, subsec. A deals with the *quantity* of the estate presumed to be conveyed, not with the *quality* of the grantors' title to that estate. The purpose of a statute of this type is to do away with the common law requirement that an estate in fee simple can be conveyed only by a conveyance containing words of general inheritance such as "to B and his heirs and assigns forever". See Restatement of the Law of Property §§ 27, 39, 40 (1936). Here obviously the intent was that the sellers were to convey the entire estate that they had whatever that estate might be, not merely a life estate or a term for years. By contracting for a grant deed, free and clear of all encumbrances made, done or suffered by the sellers, the parties have placed an express limit on the *quality* of the title

which the buyers can require the sellers to deliver upon payment of the purchase price in full.

For the foregoing reasons, it is our opinion that the trial court erred in holding that the sellers were required to furnish marketable title under the contract in question. Having arrived at this conclusion, it is unnecessary for us to consider whether the sellers could in fact deliver marketable title. Inasmuch as the depositions on file negate any possibility that the buyers could prevail on the cause of action for fraudulent misrepresentations, the sellers' motion for summary judgment should have been granted.

The judgment entered by the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.

JACOBSON, C. J., Division 1, and DONOFRIO, J., concur.